# IN THE MATTER OF THE ADOPTION OF: L.O.F. and N.M.F., Minors

S. Ct. Civil No. 2013-0087

Supreme Court of the Virgin Islands

May 20, 2015

ELIZABETH A. KLIESCH, ESQ., Law Offices of Elizabeth A. Kliesch, St. Croix, USVI, *Attorney for Appellants.*

PAMELA R. TEPPER, ESQ., KIMBERLY L. SALISBURY, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for the Government of the Virgin Islands.*[1]

DIANE M. RUSSELL, ESQ., Law Offices of Diane M. Russell, P.C., St. Croix, USVI, *Attorney for Amici Curiae Virgin Islands Volunteer Advocates for Children, Inc., Lutheran Social Services of the Virgin Islands, Unitarian Universalist Fellowship of St. Croix, Domestic Violence and Sexual Assault Council, Child Abuse and Neglect Task Force, Good Hope Country Day School, and Professor Aimee Bellmore, Ph.D.*[2]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(May 20, 2015)

CABRET, *Associate Justice.* The biological mother of L.O.F. and N.M.F. and her same-sex partner appeal the Superior Court's denial of an adoption petition seeking legal recognition of the partner as co-parent of the minor children along with the biological mother. Because the Superior Court misinterpreted the adoption statutes in denying the

---

[1] Because the appellants "questioned the validity of a Virgin Islands statute," this Court gave the Government an opportunity to respond to the appellants' brief under Supreme Court Rule 22(n), even though the Government was not a party to the Superior Court proceedings. Despite filing a notice of appearance, the Government later informed this Court that it would not be participating in this matter.

[2] This Court accepted an amicus brief filed on behalf of these entities under Supreme Court Rule 23.

petition, we vacate the Superior Court's order and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The biological mother of L.O.F. and N.M.F. and her same-sex partner filed an adoption and name-change petition in the Superior Court of the Virgin Islands in December 2012. This petition asked the Superior Court to grant an adoption in the partner's favor with "the parental rights and duties of [the biological mother] remain[ing] in full force and effect following the adoption," so that "all parental rights and obligations [are] shared equally" between the biological mother and her partner — an arrangement the petition described as a "second-parent adoption." The couple was married in Canada in 2007,[3] and according to the petition, both women have raised the children together on St. Croix since the children were born. The petition also stated that the children's biological fathers are anonymous sperm donors who "knowingly, intentionally, and effectively waived all parental rights."

Several months later, the Superior Court ordered the petitioners to brief the issue of whether it could grant the proposed adoption "when the petitioners are the same [sex]."[4] In response, the petitioners argued that the proposed adoption was in the best interests of the children and that nothing in the Virgin Islands Code prohibited the Superior Court from granting the petition. The Superior Court disagreed, denying the petition in a September 18, 2013 order and holding that because the petitioners

---

[3] Canada has recognized marriages between same-sex couples nationwide since 2005. Canada Federal Statutes, Civil Marriage Act, S.C. 2005, c. 33; *see also* Marie-France Bureau, *National Project: Canada*, 19 AM. U. J. GENDER SOC. POL'Y & L. 85, 85 (2011).

[4] Although the Superior Court characterized the petitioners as being of the same "gender," the terms "gender" and "sex" are not interchangeable. "Gender" refers to socially-constructed roles and attributes typically associated with men and women respectively, *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 148 (3d Cir. 1999), while "sex" refers to "the biological differences between men and women." *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000). Although other courts often use these terms interchangeably as the Superior Court did here, this Court's practice has been to recognize the distinction between these terms and we continue to do so here. *See Webster v. People*, 60 V.I. 666, 673 (V.I. 2014) (a statute making all assaults committed by "males" against "females" aggravated in nature created a "*sex*-based classification," violating equal protection); *cf. Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 749 n.1 (4th Cir. 1996) ("[C]ourts, speaking in the context of Title VII, have used the term 'sex' and 'gender' interchangeably to refer simply to the fact that an employee is male or female.").

"filed together as spouses" under "a limited 'spousal' or 'stepparent' " provision in the adoption statutes, and the Virgin Islands Code limits marriage to opposite-sex couples, it could not grant the adoption.

The petitioners then moved for reconsideration, but the Superior Court denied this motion, reaffirming its original holding while emphasizing that its decision was based only on its interpretation of the law, not on any animus toward the petitioners or their relationship. The petitioners filed a timely notice of appeal with this Court, appealing both the order denying the adoption petition and the order denying the motion for reconsideration.[5]

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." 4 V.I.C. § 32(a). "An order is considered to be final for purposes of this statute if it ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Joseph v. Inter-Ocean Ins. Agency, Inc.*, 59 V.I. 820, 823 (V.I. 2013) (internal quotation marks omitted). The Superior Court's orders denying the adoption and name-change petition and denying reconsideration ended the litigation on the merits, constituting a final judgment over which we have jurisdiction. *See In re Reynolds*, 60 V.I. 330, 332 (V.I. 2013) (an order denying a name-change petition was an appealable final judgment).

## III. DISCUSSION

The petitioners, now appellants, argue that the Superior Court misinterpreted the adoption statutes to impose a marriage requirement where none exists. They maintain that this construction — mandating a denial of the petition because their marriage is not recognized in the Virgin Islands — violates the Equal Protection Clause of the Fourteenth

---

[5] Even though the Superior Court's order denying reconsideration was included in the notice of appeal, because we ultimately vacate the underlying order that was the subject of the motion for reconsideration, we do not address the Superior Court's denial of that motion. *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 407-08 (V.I. 2008) (declining to address arguments regarding the denial of a motion to reconsider after reversing the underlying order); *see also Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 548 (6th Cir. 2007) ("We do not address the order denying [the] motion for reconsideration, as our decision as to the first order renders that issue moot.").

Amendment to the United States Constitution. The appellants argue in the alternative that even if there is a marriage requirement, because the Virgin Islands Code does not specifically prohibit the recognition of a valid same-sex marriage solemnized outside of the Territory, their marriage must be recognized in the Virgin Islands. *See* 16 V.I.C. §§ 1-4 (identifying as void or voidable certain incestuous, polygamous, and fraudulent marriages that "shall be deemed illegal" if entered into in another jurisdiction by Virgin Islands residents). We agree with the appellants that the Superior Court erred in denying the adoption petition based solely on a misinterpretation of the adoption statutes, regardless of whether the appellants' marriage must be recognized in the Virgin Islands.

In their petition, the appellants described the proposed adoption as a "second-parent adoption." A second-parent adoption is one involving "an adoption by an adult who is not the spouse of the child's biological or custodial parent." Mark Strasser, *Courts, Legislatures, and Second-Parent Adoptions: On Judicial Deference, Specious Reasoning, and the Best Interests of the Child*, 66 TENN. L. REV. 1019, 1027 (1999). Because same-sex marriage was once prohibited in every United States jurisdiction, stepparent adoptions — which allowed a married stepparent to adopt her spouse's children — were unavailable to same-sex couples. *See In re Adoption of Baby Z.*, 247 Conn. 474, 724 A.2d 1035, 1057 (1999), *superseded by statute*, CONN. GEN. STAT. § 45a-724(a)(2)-(3), *as recognized in Rosengarten v. Downes*, 71 Conn. App. 372, 802 A.2d 170, 180-82 (2002). So instead, some courts began granting adoptions to unmarried same-sex partners as "second parents," allowing a "child born to or legally adopted by one partner [to be] adopted by [the unmarried] non-biological or non-legal second parent, with the consent of the legal parent, and without changing the [legal parent's] rights and responsibilities" to the child. *Sharon S. v. Superior Court*, 31 Cal. 4th 417, 2 Cal. Rptr. 3d 699, 73 P.3d 554, 558 n.2 (2003) (internal quotation marks, citation, and alteration omitted); *see In re Adoption of K.S.P.*, 804 N.E.2d 1253, 1258 & n.4 (Ind. Ct. App. 2004) (collecting cases both accepting and rejecting second-parent adoptions).

The Superior Court held that it could not grant a second-parent adoption while leaving the parental rights of the biological mother intact because an adoption decree would terminate the biological mother's parental rights as a matter of law. The Superior Court explained that while the adoption statutes provide an exception to this termination of parental

rights, it is available only in adoptions by a spouse of the natural parent, and because "Virgin Islands law, as it stands, only recognizes . . . marriage 'between a man and a woman,' " this "spousal or stepparent exception" is not available in the case of an adoption by a same-sex partner of the biological parent.

■ ■ This Court applies plenary review to the Superior Court's construction of a statute. *Reynolds*, 60 V.I. at 333 (citing *Billu v. People*, 57 V.I. 455, 461 (V.I. 2012)). "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Id.* at 334 (quoting *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013)). In analyzing a statutory scheme, we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — "wholly superfluous and without an independent meaning or function of its own." *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012); *see also* 1 V.I.C. § 42 ("Words and phrases shall be read with their context."); *Ottley v. Estate of Bell*, 61 V.I. 480, 493 (V.I. 2014) (we must look to "the context surrounding each statute" to determine the Legislature's intent). But even where a statutory scheme is plain and internally consistent, "no statute should be read literally if such a reading is contrary to its objective [and] this Court must consider whether applying the statute's literal language leads to . . . absurd consequences or is otherwise inconsistent with the Legislature's intent." *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (internal quotation marks, citation, and alteration omitted); *see also Peters v. People*, 60 V.I. 479, 483 (V.I. 2014); *Rohn v. People*, 57 V.I. 637, 646 n.6 (V.I. 2012); *Brady v. Gov't of the V.I.*, 57 V.I. 433, 442-43 (V.I. 2012).[6]

---

[6] We note here that the appellants appear uncertain as to whether the Superior Court should have applied *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), in construing the adoption and marriage statutes. In *Banks* and subsequent cases, we have explained that when confronting an issue of common law that this Court has yet to address, courts applying Virgin Islands law "must engage in a three-factor *Banks* analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands." *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014). But such an analysis is necessary only for issues of *common law* — i.e., non-statutory law created by judicial precedent — that this

Chapter 5, title 16 of the Virgin Islands Code governs adoptions, providing:

> Any inhabitant of the Virgin Islands may petition the proper court to adopt a child who is not [her][7] own and who is in the Virgin Islands. If desired, the petition may also ask for a change of the child's name. In no case however, may the petition of a person who has a spouse be granted unless the spouse joins therein. Except where husband and wife adopt jointly, no person shall be adopted by more than one person.

16 V.I.C. § 141. The natural parents of the child must consent to the adoption in writing, 16 V.I.C. § 142(a), and if the Superior Court concludes "that the proposed adoption is in the best interest of the child . . . a decree shall be made setting forth the facts and ordering that from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner." 16 V.I.C. § 145(a). Upon entry of an adoption decree, the natural parents are deprived of "all legal rights as respects the child, and the child is freed from all obligations of maintenance and obedience as respects his natural parents." 16 V.I.C. § 146(b).

---

Court has not addressed. *King v. Appleton*, 61 V.I. 339, 351 n.9 (V.I. 2014) (excluding case law relying on state statutes from a *Banks* analysis); *Better Bldg.*, 60 V.I. at 757 (the second *Banks* factor requires a court to identify the "rule adopted by a majority of *courts* of other jurisdictions"). The *Banks* factors, requiring Virgin Islands courts to comprehensively analyze past decisions in this jurisdiction and the common law of other United States jurisdictions before adopting a common-law rule, was developed to ensure the creation of indigenous Virgin Islands law free of undue outside influence — as intended by Congress and the Virgin Islands Legislature in creating a local judiciary independent of the federal judiciary. *Gov't of the V.I. v. Connor*, 60 V.I. 597, 602-04 (V.I. 2014); *Better Bldg.*, 60 V.I. at 756 n.9 (quoting 48 U.S.C. § 1613); *Pichardo v. V.I. Comm'r of Labor*, 613 F.3d 87, 95, 53 V.I. 936 (3d Cir. 2010); *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 362 n.3, 49 V.I. 1133 (3d Cir. 2007). But when dealing with the interpretation of a Virgin Islands statute, courts must utilize the canons of statutory construction defined by this Court and the Virgin Islands Code in order to determine the intent of the Legislature — which must control over any common-law authority that would be the focus of a *Banks* analysis. *Bryan v. Fawkes*, 61 V.I. 201, 212 (V.I. 2014) ("Congress 'implicitly incorporated the principle of separation of powers into the law of the [T]erritory.' " (quoting *Kendall v. Russell*, 572 F.3d 126, 135, 52 V.I. 1021 (3d Cir. 2009))); *Reynolds*, 60 V.I. at 337 n.7 ("mindful of the separation of powers," this Court "lacks the authority to amend the Virgin Islands Code" (internal quotation marks and citation omitted)); *see also* 1 V.I.C. §§ 41-52 (providing default rules of statutory construction).

[7] Although this provision uses the gendered pronoun "his," "words importing the masculine gender include the feminine" in the Virgin Islands Code. 1 V.I.C. § 41.

█ Contrary to the Superior Court's characterization, relying only on a plain-language reading of sections 141 and 146(b) would preclude the Superior Court from granting either stepparent or second-parent adoptions entirely. This is because section 145(a) presents the Superior Court with two options depending on what it determines the child's best interests to be: either enter an adoption decree in favor of the petitioner, or deny the petition. *See Shoy v. People*, 55 V.I. 919, 927 (V.I. 2011) ("The use of the mandatory word 'shall' normally serves to create an obligation impervious to judicial discretion."); 3A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES & STATUTORY CONSTRUCTION § 69:4 (7th ed. 2007) ("The word 'shall' in an adoption statute ordinarily imposes an imperative duty."). In turn, section 146 — prescribing the legal effect of an adoption decree — provides that "[t]he natural parents of such child are deprived by a decree under section 145 of this title of all legal rights as respects the child." 16 V.I.C. § 146(b). Thus, by its plain language, section 146(b) operates as a necessary result of every adoption decree entered by the Superior Court under section 145. And the last sentence of section 141, which the Superior Court relied on to find an exception to section 146(b) only for married stepparents, does not create such an exception, providing instead that "[e]xcept where husband and wife adopt *jointly*, no person shall be adopted by more than one person." In other words, it provides that two people may adopt one child in a single proceeding only where those two people are "husband and wife" — not that a husband or wife may individually adopt the child of the other spouse.

This reading is mandated by the Legislature's instruction that "[w]ords . . . shall be construed according to the common and approved usage of the English language," 1 V.I.C. § 42, as all authorities agree that "[t]he plain meaning of the word 'jointly' indicates that the decision be made by at least two persons acting in concert." *In re Wenger*, 504 N.W.2d 794, 798 (Minn. Ct. App. 1993) (quoting *Buchanan v. Ives*, 793 F. Supp. 361, 366 (D. Me. 1991)); *see also* BLACK'S LAW DICTIONARY 34, 913 (9th ed. 2009) (defining "joint action" as "[a]n action brought by two or more plaintiffs," and "joint" as "common to or shared by two or more persons"); THE MERRIAM-WEBSTER DICTIONARY 268 (2005) (defining "joint" as "common to two or more"); *accord Gen. Teamsters Local Union No. 174 v. NLRB*, 723 F.2d 966, 971, 232 U.S. App. D.C. 440 (D.C. Cir. 1983) ("The term 'joint bargaining' is

commonly used to describe a bargaining arrangement that binds all of the participants.").

■ But in a stepparent adoption — as in a second-parent adoption — two people are not seeking to "adopt jointly," since it is the stepparent alone who is seeking to establish legal rights with respect to the child, while the original parent would simply maintain her pre-existing legal relationship with the child. Nor can section 141 be read in a way that would allow a husband and wife to seek an adoption decree in favor of them both even where one spouse already has pre-existing legal rights with respect to the child, since section 141 provides first and foremost that "[a]ny inhabitant of the Virgin Islands may petition the proper court to adopt a child *who is not [her] own.*" (Emphasis added). Thus, section 141's provision for joint adoptions by a "husband and wife" does not create an exception to section 146(b)'s mandate that an adoption decree terminate the rights of the original parent. Nor does any other provision of the adoption statutes create such an exception — regardless of whether the proposed adoptive parent is a married stepparent or an unmarried second parent.

■ Even though this result — precluding both stepparent and second-parent adoptions in the Virgin Islands — follows from a plain reading of an internally consistent statutory scheme, we must be sure this reading does not conflict with the intent of the Legislature or create absurd results before ending our examination of the adoption statutes. *Percival v. People*, 61 V.I. 187, 194 (V.I. 2014) (quoting *Brady*, 57 V.I. at 442-43); *Peters*, 60 V.I. at 483; *Gilbert*, 52 V.I. at 356. Enforcing a plain reading in this instance would do both.

While conventionally an inquiry into legislative intent would begin with legislative history — such as committee reports and statements from legislators during debate on the statute in question — none of those materials are available here. Nearly all of the language of sections 141 through 146 was first enacted by the respective Colonial Councils of the municipalities of St. Croix and St. Thomas-St. John as part of the 1921 Codes. (This would appear to explain the absence of language providing for stepparent adoptions, as it seems likely that divorce and remarriage — and the resulting stepparents — were far less common in 1921 than

today.)[8] After Congress created a single unified Legislature for the Territory in the Revised Organic Act of 1954, these adoption provisions were reenacted without significant alteration as part of the Virgin Islands Code in 1957. *See Webster v. People*, 60 V.I. 666, 674 n.3 (V.I. 2014) (quoting *People v. Simmonds*, 58 V.I. 3, 15 (V.I. Super. Ct. 2012)). Yet there do not appear to be any legislative materials from either 1921 or 1957 that would inform our legislative-intent inquiry here. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 976 n.4 (V.I. 2011) (noting the loss of "microfilm containing legislative history between February 28, 1957 and April 13, 1959"); *In re Baby Girl Lake*, 33 V.I. 66, 75 n.5 (V.I. Super. Ct. 1995) ("[T]he Archives Division of the Legislature of the Virgin Islands lost its computers due to Hurricane Marilyn.").

"Nevertheless, the absence of any relevant legislative history does not leave us without interpretative tools," *Bryan v. Fawkes*, 61 V.I. 201, 231 (V.I. 2014), and with regard to adoption, the statutory objective is clear even without legislature history. Virgin Islands courts have long explained that "the paramount issue in an adoption is the welfare of the child," *In re Sheryl*, 14 V.I. 187, 191 (V.I. Super. Ct. 1977), and it is "a recurring theme in our Code's domestic relations statutes . . . that a court must consider the best interests of the child when making decisions that concern the child." *Madir v. Daniel*, 53 V.I. 623, 631 (V.I. 2010); *see also James v. Faust*, 62 V.I. 554, 560-61 (V.I. 2015) (reemphasizing the importance of the best-interests standard that has guided this Court's family-law jurisprudence).

In light of the Legislature's clear objective in enacting the domestic relations statutes, we agree with those courts that have held that statutes like section 146(b) "should not be read literally and restrictively where to do so would defeat the best interests of the children and would produce a wholly absurd and untenable result." *In re Adoption of Two Children by H.N.R.*, 285 N.J. Super. 1, 666 A.2d 535, 538 (1995); *see also In re Adoption of R.B.F.*, 569 Pa. 269, 803 A.2d 1195, 1203 (2002) ("It is a settled rule that in the construction of statutes an interpretation is never to be adopted that would defeat the purpose of the enactment."). These courts have explained that in construing provisions like section 146(b),

---

[8] *See* Judith G. McMullen, *Why Do We Need A Lawyer?: An Empirical Study of Divorce Cases*, 12 J. L. & FAM. STUD. 57, 60 (2010) ("For much of American history, divorce was rare and available only to a wealthy few.").

"our primary loyalty must be to the statute's legislative purpose — the child's best interest." *In re Jacob*, 86 N.Y.2d 651, 660 N.E.2d 397, 399, 636 N.Y.S.2d 716 (1995). And "since the paramount purpose of the adoption laws is to make provision for the welfare of children, the better rule is to construe adoption statutes in a manner that will promote this purpose." *S.O. v. W.S.*, 643 P.2d 997, 1002 n.7 (Alaska 1982) (internal quotation marks and citation omitted), *overruled on other grounds by Rosen v. Bd. of Pub. Accountancy*, 689 P.2d 478, 481-83 (Alaska 1984); *see also In re M.M.D.*, 662 A.2d 837, 845 n.4 (D.C. 1995) (collecting cases).

■ It is clear that the best interests of the children "would certainly be advanced in situations like those presented here by allowing the two adults who actually function as a child's parents to become the child's legal parents." *Jacob*, 660 N.E.2d at 399. Granting an adoption in favor of a stepparent or second parent who already serves as the child's functional parent, without terminating the rights of the original parent, furthers the child's best interests because the child will be able to "preserve [the] unique filial ties" to the stepparent or second parent in the event she divorces or separates from the original parent, or the original parent predeceases the stepparent or second parent. *Adoption of Tammy*, 416 Mass. 205, 619 N.E.2d 315, 320 (1993). This will provide "the emotional security of knowing that in the event of the biological parent's death or disability, the other parent will have presumptive custody, and the children's relationship with their parents, siblings and other relatives will continue should the coparents separate." *Jacob*, 660 N.E.2d at 399. Because an adoption decree "deem[s], for the purpose of inheritance and all other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption," 16 V.I.C. § 146(b), the child of such an adoption would be entitled to "Social Security and life insurance benefits in the event of a parent's death or disability, the right to sue for the wrongful death of a parent, the right to inherit under rules of intestacy," *Jacob*, 660 N.E.2d at 399, the right "to receive support from [the adoptive parent]," and "to be eligible for coverage under [the adoptive parent's] health insurance policies." *Tammy*, 619 N.E.2d at 320.

■ It is equally clear that strictly applying section 146(b) to prevent all stepparent and second-parent adoptions would actively undermine the best interests of children such as L.O.F. and N.M.F., and thus "undercut

666

the Legislature's clear intent." *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 546 (V.I. 2015). In the absence of legal recognition for a stepparent or second parent who is in all respects already the functional parent — like the proposed adoptive parent here — "the case law and commentary . . . illustrate [that] when the functional parents of [these] children . . . separate or one dies, the children often remain in legal limbo for years while their future is disputed in the courts." *Tammy*, 619 N.E.2d at 320-21 & n.9 (collecting authorities). Therefore, "termination of parental rights [under these] circumstances 'would be an absurd outcome which would nullify the advantage sought by the proposed adoption: the creation of a legal family unit identical to the actual family setup.' " *K.S.P.*, 804 N.E.2d at 1258 (quoting *In re Adoption of Evan*, 153 Misc. 2d 844, 583 N.Y.S.2d 997, 1000 (N.Y. Sur. Ct. 1992)); *see also* Strasser, 66 TENN. L. REV. at 1029-40 ("Courts should not minimize the important emotional benefits of permitting the second-parent adoption.") (collecting cases).

■ Allowing the Superior Court to grant a stepparent or second-parent adoption where it is in the child's best interests, and both the original parent and the adopting parent have consented, is also in line with this Court's precedent explaining that a statutory right that does not "implicate[] judicial interests beyond those of the parties" is subject to waiver. *Mustafa v. Camacho*, 59 V.I. 566, 571 n.2 (V.I. 2013); *see also Brunn v. Dowdye*, 59 V.I. 899, 906 n.6 (V.I. 2013) (there are "many provisions — even in statutes — that . . . are . . . subject to waiver"); *accord People ex rel. K.J.F.*, 59 V.I. 333, 345 (V.I. 2013) (declining to reverse even though the Superior Court ignored the plain language of a statute where the error was to the appellant's benefit).

Section 146(b) does not implicate interests beyond those of the parties, as "[t]he obvious purpose of [provisions like section 146(b)] is to shield the adoptive family from unnecessary instability and uncertainty arising from unwanted intrusions by the child's biological family." *K.S.P.*, 804 N.E.2d at 1257; *see also Jacob*, 660 N.E.2d at 403 (the purpose of such a statute is "to prevent unwanted intrusion by the child's former biological relatives to promote the stability of the new adoptive family"); *accord In re Infant Sherman*, 49 V.I. 452, 465 (V.I. 2008) (Swan, J., concurring) (another Virgin Islands adoption provision served "to protect the new family unit of adopted parents and adoptee"). As the Supreme Court of California noted with regard to a similar California statute,

"nothing therein, or in any other statutory provision, prohibits the parties to an independent adoption from waiving the benefits of [the statute] when a birth parent intends and desires to coparent with another adult who has agreed to adopt the child and share parental responsibilities." *Sharon S.*, 73 P.3d at 561. And indeed, "it would be against common sense to terminate the biological parent's rights when that parent will continue to raise and be responsible for the child, albeit in a family unit with a partner who is biologically unrelated to the child." *In re Adoption of B.L.V.B.*, 160 Vt. 368, 628 A.2d 1271, 1274 (1993).

Allowing an adopting parent to waive enforcement of this provision and maintain the legal rights of the natural parent when it is in the best interests of the child to do so also follows the widely recognized principle that adoption statutes "must be strictly construed to protect the rights of natural parents." *In re Adoptions of Groh*, 153 Ohio App. 3d 414, 2003 Ohio 3087, 794 N.E.2d 695, 706 (2003); *see also K.S.P.*, 804 N.E.2d at 1257; *Westerlund v. Croaff*, 68 Ariz. 36, 198 P.2d 842, 843-44 (1948). This is because "[t]he adoption of children . . . , while an ancient practice recognized in both Babylonian and Roman Law, was unknown at common law, existing in the United States only by virtue of legislative action of individual states beginning in the middle of the nineteenth century." *In re Hart*, 806 A.2d 1179, 1183 (Del. Fam. Ct. 2001).

 So while we must not interpret the adoption statutes to undermine the legislative purpose of promoting the best interests of the child, we must also remember that "[a]doption is not part of our common law tradition," and instead works to abrogate the common-law rights of natural parents. *Infant Sherman*, 49 V.I. at 462 (Swan, J., concurring) (collecting cases); *see also In re B.W.*, 908 N.E.2d 586, 592 (Ind. 2009) ("the adoption statute creates a statutory proceeding unknown at common law," requiring the court to "strictly construe the statute in favor of the rights of biological parents"); *accord McIntyre v. McIntyre*, 341 N.C. 629, 461 S.E.2d 745, 748 (1995) (stating "the common law rule . . . that parents have a paramount right to custody, care and nurture of their children, . . . includ[ing] the right to determine with whom their children shall associate" (internal quotation marks, citation, and alteration omitted)). And like all statutes that are in derogation of the common law, section 146(b) must be construed wherever possible to avoid disturbing

the common-law rights of natural parents.[9] *Defoe*, 56 V.I. at 121; *Cascen v. People*, 60 V.I. 392, 404-05 (V.I. 2014).

 In this case, the adoption petition was filed by the partner as the proposed adoptive parent and joined by the biological mother, explicitly seeking a "second-parent adoption" that would grant the partner legal rights over L.O.F. and N.M.F., while maintaining those of the biological mother. Under these circumstances, there can be no doubt that the partner — as the proposed adoptive parent — has waived enforcement of 16 V.I.C. § 146(b), and that the biological mother — as the only person with legal rights with respect to the children — has consented to the adoption as required by 16 V.I.C. § 142(a). And if the Superior Court determines on remand — after following the procedures outlined in 16 V.I.C. §§ 141-147 — that granting the adoption petition in favor of the partner while maintaining the parental rights of the biological mother "is in the best interest of the child[ren]," the Superior Court "shall . . . order[] that from the date of the decree the child[ren] shall, to all legal intents and purposes, be the child[ren] of the petitioner." 16 V.I.C. § 145(a).

Accordingly, because the Superior Court erred in denying the adoption petition based only on an erroneous reading of the adoption statutes, we vacate the Superior Court's September 18, 2013 order, reinstate the adoption petition, and remand for the Superior Court to continue with the adoption proceedings in line with the best interests of the children.[10]

---

[9] While we recognize that many courts have disapproved of second-parent adoptions by same-sex partners specifically, those cases appear to have uniformly dealt with statutes expressly allowing stepparent adoptions at a time when those jurisdictions did not recognize same-sex marriages. *See, e.g., In re Adoption of T.K.J.*, 931 P.2d 488, 493 (Colo. App. 1996); *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 821-28 (Ky. Ct. App. 2008); *In re Adoption of Doe*, 130 Ohio App. 3d 288, 719 N.E.2d 1071, 1072-73 (1998); *In re Adoption of Luke*, 263 Neb. 365, 640 N.W.2d 374, 382-83 (2002); *In re Angel Lace M.*, 184 Wis. 2d 492, 516 N.W.2d 678, 682-83 (1994). None of these courts dealt with a statute — like ours — that does not speak to stepparent or second-parent adoptions at all.

[10] Because the Superior Court may grant the partner's petition to adopt L.O.F. and N.M.F. without terminating the biological mother's legal rights if it is in the best interests of the children to do so — regardless of the appellants' marital status — we decline to address here whether the Virgin Islands must recognize the appellants' foreign same-sex marriage. Nor do we comment on the constitutionality of 16 V.I.C. § 141, providing that only a "husband and wife [may] adopt jointly," or of 16 V.I.C. § 31, which defines marriage as "a civil contract which may be entered into between a male and a female." *See Bryan v. Fawkes*, 61 V.I. 416, 465 n.27 (V.I. 2014) ("[T]his Court has held that the doctrine of constitutional avoidance cautions against gratuitously deciding constitutional issues.") (citing *Azille v. People*, 59 V.I.

## IV. CONCLUSION

The Superior Court erred in denying the appellants' petition for a second-parent adoption because, regardless of whether their marriage is recognized in the Virgin Islands, 16 V.I.C. § 141 broadly provides that "[a]ny inhabitant of the Virgin Islands" may petition for an adoption. And even though the adoption statutes do not provide any exceptions to the operation of 16 V.I.C. § 146(b) — providing that an adoption decree terminates "all legal rights [of the natural parents] as respects the child" — a strict application of this provision would preclude any stepparent or second-parent adoptions in the Virgin Islands and undermine the Legislature's directive that the best interests of the child must be paramount in adoption proceedings. Accordingly, we vacate the Superior Court's September 18, 2013 order denying the adoption petition, reinstate the petition, and remand for further proceedings.

---

215, 227 (V.I. 2012)). But we note that the United States Supreme Court will likely decide in the near future whether statutes like 16 V.I.C. § 31 are constitutional. *Obergefell v. Hodges*, 135 S. Ct. 1039, 1040, 190 L. Ed. 2d 908 (2015) (granting certiorari on the question "Does the Fourteenth Amendment require a state to license marriage between two people of the same sex?"); *see also* 48 U.S.C. § 1561 (the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment "shall have the same force and effect [in the Virgin Islands] as in the United States or in any State of the United States").