**ONE ST. PETER, LLC, Appellant/Petitioner**
**v.**
**BOARD OF LAND USE APPEALS, Appellee/Respondent**

S. Ct. Civil No. 2015-0120

Supreme Court of the Virgin Islands

August 28, 2017

MARIA T. HODGE, ESQ., Hodge & Hodge, St. Thomas, USVI, *Attorney for Appellant.*

IAN S.A. CLEMENT, ESQ., MICHAEL J. MOURIDY, ESQ., Assistant Attorneys General, St. Thomas, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (August 28, 2017)

CABRET, *Associate Justice*. One St. Peter, LLC ("One St. Peter") appeals the Superior Court's October 9, 2015 order, which affirmed the decision of the Board of Land Use Appeals ("BLUA") dismissing One St. Peter's petition as untimely. Because One St. Peter's petition to the BLUA was untimely, we affirm the Superior Court's October 9, 2015 order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tree Limin' Extreme, LLC ("Tree Limin' ") purports to operate an "adrenaline charged . . . zip line adventure" that offers participants a "high energy descent" through "the rainforest of St. Peter Mountain" on St. Thomas. Participants travel down St. Peter Mountain on a wire, which is suspended by a series of platforms anchored to the ground by wires. On October 24, 2011, the Department of Planning and Natural Resources ("DPNR") issued a building permit to Tree Limin' for the construction of an "Office/Site Zip Park" on land adjacent to property owned by One St. Peter. DPNR did not send a copy of that building permit to One St. Peter.

Although the record is silent with respect to when Tree Limin' began construction, Tree Limin' claims that it began construction "immediately" after DPNR issued the permit, and that it posted the permit before beginning construction. Although the record does not specify when, at some point after Tree Limin' began construction — but before March 20, 2012 — One St. Peter complained to both Tree Limin' and DPNR that Tree Limin's construction of a wire anchor allegedly violated the 15-foot setback requirement imposed by section 229 of title 29 of the Virgin Islands Code. Following One St. Peter's complaint, DPNR visited Tree Limin's construction site on March 20, 2012 "to investigate whether or not a setback violation had been created." DPNR notified Tree Limin' by letter that "[n]o adverse [e]ffects to adjacent property have been created, and [the location of wire anchors] does not violate the intent of the R-1 setback."[1] DPNR did not send One St. Peter a copy of that letter.

---

[1] The Virgin Islands Code divides real property in the territory into 18 districts. *See* 29 V.I.C. § 223. "No building or structure in any district . . . shall be erected, converted, enlarged . . .

On May 28, 2012, a local newspaper published an article about the construction of Tree Limin's zip line. The following day, May 29, 2012, One St. Peter sent a letter to Tree Limin', complaining that its construction violated the R-1 setback requirements, and that the operation of a zip line in an R-1 zone is illegal. Tree Limin' did not cease its operations.

On July 17, 2012 — more than 30 days after its May 29, 2012 letter to Tree Limin' and more than 90 days after complaining to DPNR — One St. Peter petitioned the BLUA to vacate all orders issued by DPNR permitting Tree Limin' to construct its zip line. Tree Limin' moved to intervene and to dismiss One St. Peter's petition as untimely. The BLUA held a hearing on July 11, 2013, and without considering the merits of One St. Peter's petition, concluded that One St. Peter's petition was untimely under section 295(a) of title 29 of the Virgin Islands Code, and orally granted Tree Limin's motions to intervene and to dismiss One St. Peter's petition. The BLUA did not issue a written order confirming these decisions.

One St. Peter appealed the BLUA's oral ruling to the Superior Court. It argued that its appeal to the BLUA was timely under section 295(a) because it never received a copy of the orders it had appealed. Without holding a hearing, the Superior Court upheld the BLUA's dismissal of One St. Peter's petition. The Superior Court reasoned that, although section 295(a) permits any person to appeal a decision made by DPNR "within thirty (30) days after receipt of the order or ruling complained of," section 295(a) "is ambiguous and subject to conflicting interpretations because the word 'receipt' is not defined by the statute." The Superior Court concluded that a petitioner challenging the issuance of a building permit "must file a notice of appeal within thirty days from the date the petitioner receives notice of DPNR's decision and not within thirty days from the date the petitioner receives a physical or electronic copy of the building permit." Reasoning that One St. Peter "had constructive notice of the issuance of the building permit and actual knowledge of the facts constituting the basis for objecting to the issuance of the permit," the

---

or . . . be used . . . for any purpose other than as permitted in [that] district." 29 V.I.C. § 227. An "R-1" district is a "Residence Low Density" district, 29 V.I.C. § 223(3), and while an entity may construct "parks & recreational areas" in an R-1 district, they may not construct "amusement parks." 29 V.I.C. § 228 (defining the permitted uses of each zoning district).

Superior Court concluded that One St. Peter's petition to the BLUA was not filed within the 30-day period prescribed by section 295(a). By memorandum opinion and order entered on October 9, 2015, the Superior Court dismissed One St. Peter's appeal with prejudice. One St. Peter filed a timely notice of appeal on November 30, 2015. *See* V.I. R. APP. P. 5(a)(1).

## II. JURISDICTION

This Court has jurisdiction over all appeals from final orders of the Superior Court. V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's October 9, 2015 order is a final order because it disposed of all remaining claims before the Superior Court. We therefore have jurisdiction over this appeal. *See Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 585 (V.I. 2014).

## III. DISCUSSION

One St. Peter argues that the Superior Court erred in finding section 295(a) of title 29 to be ambiguous and subject to conflicting interpretations, and that the Superior Court's interpretation of section 295(a) is clearly erroneous and produces absurd results. We exercise plenary review over the Superior Court's interpretation of a statute. *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (citing *In re Reynolds*, 60 V.I. 330, 333 (V.I. 2013)).

▇ When interpreting statutory text, our first step "is to determine whether the language at issue has a plain and unambiguous meaning." 62 V.I. at 661 (internal quotation marks omitted). In doing so, we read the words and phrases of the statute in their context, and construe them according to the common and approved usage of the English language. 1 V.I.C. § 42; *accord Yates v. United States*, 574 U.S. ___, 135 S. Ct. 1074, 1081-82, 191 L. Ed. 2d 64 (2015) (" '[T]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which the language is used, and the broader context of the statute as a whole.' " (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) (alterations in original)). Statutory language is ambiguous when it is susceptible to more than one interpretation. *See Sharpe v. State*, 350 P.3d 388, 391 (Nev. 2015) ("A statute is ambiguous when the statutory language lends itself to two or more reasonable interpretations." (citation and

internal quotation marks omitted)); *Butler v. Fairfax Cty. Sch. Bd.*, 291 Va. 32, 780 S.E.2d 277, 280 (2015) ("A statute is ambiguous if the text can be understood in more than one way or refers to two or more things simultaneously, or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." (citation and internal quotation marks omitted)); *accord Buchholz v. City of Oriska*, 2000 ND 115, 611 N.W.2d 886, 887 (N.D. 2000); *Family Med. Found., Inc. v. Bright*, 96 Ohio St. 3d 183, 2002 Ohio 4034, 772 N.E.2d 1177, 1179 (2002); *In re Commitment of Lombard*, 2004 WI 95, 273 Wis. 2d 538, 684 N.W.2d 103, 109 (2004); *cf. Thomas*, 60 V.I. at 595 (finding the language of a restrictive covenant ambiguous because it was susceptible to multiple interpretations); *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996) (finding the language of a contract to be ambiguous because it was susceptible to more than one reasonable interpretation).

Section 295(a) provides in pertinent part that

> [a]ny person who feels that an injustice has been done him by any order, rule, or regulation of the Commissioner of Planning and Natural Resources or the Commissioner of Health issued under the authority provided in this Code may appeal therefrom to the Board of Land Use Appeals by filing a written notice of his appeal with the Board within thirty (30) days after receipt of the order or ruling complained of.

This language contains three main phrases. The phrase "[a]ny person who feels that an injustice has been done him by any order, rule, or regulation of the Commissioner of Planning and Natural Resources or the Commissioner of Health issued under the authority provided in this Code" functions as section 295(a)'s subject phrase, defining the class of persons to whom this statute applies. *See Ass'n of Apt. Owners of Maalaea Kai, Inc. v. Stillson*, 108 Haw. 2, 116 P.3d 644, 649-50 (2005) (explaining the function of a subject phrase). The phrase "may appeal therefrom to the Board of Land Use Appeals" functions as the statute's verb phrase, explaining what the statute permits. *See Falls v. JVC America, Inc.*, 7 So. 3d 986, 990-91 (Ala. 2008) (explaining the function of a verb phrase). The phrase "by filing a written notice of his appeal with the Board within thirty (30) days after receipt of the order or ruling complained of" functions as an adverbial phrase, explaining how the subject of the statute takes the action permitted by the statute. *See, e.g., ILHC of Eagan, LLC v. County of Dakota*, 693 N.W.2d 412, 420 (Minn. 2005) (explaining the function of an adverbial phrase (citing WILLIAM SA-

BIN, THE GREGG REFERENCE MANUAL 517 (8th ed. 1996))). When read together, these phrases provide a framework for appealing decisions issued pursuant to the Virgin Islands Building Code.[2]

The problem with this framework is that section 295(a) is silent with respect to *how* an appellant must receive the order or ruling they seek to appeal. No provision of section 295, the Building Code, or all of title 29 and its related regulations supplies an answer. One St. Peter argues that an appellant must receive "a copy of the orders or rulings complained of." Arguing that such an interpretation would require DPNR to disseminate tangible copies of all appealable orders or rulings to all potential appellants — literally "anyone who feels that an injustice has been done him" under section 295(a) — the BLUA claims that, as used in section 295(a), receipt refers to "notice of the complained of order or rule[.]" The BLUA bases its argument on the premise that one can receive an order or ruling intangibly, *e.g.*, orally. *Cf. Mapp v. Fawkes*, 61 V.I. 521, 536 (V.I. 2014) (reversing an oral order issued by the Superior Court). Because the word "receipt" is undefined, and because it is capable of multiple interpretations, the word "receipt" as used in section 295(a) is ambiguous.

■ When statutory language is ambiguous, "we will proceed to examine the legislative history of the statute and its purpose to ascertain if [a proposed] interpretation was within the legislature's intent." *Sonson v. People*, 59 V.I. 590, 598 (V.I. 2013). In doing so, we remain mindful that "[a] statute should not be construed and applied in such a way that would result in injustice or absurd consequences." *Gilbert v. People*, 52 V.I. 350, 356 (V.I. 2009) (citing *Am. Dredging Co. v. Local 25, Marine Div., Int'l Union of Operating Eng'rs*, 338 F.2d 837, 842-43 (3d Cir. 1964)). An interpretation must also give effect to every provision of section 295(a), "making sure to avoid interpreting any provision in a manner that would render it — or another provision — 'wholly superfluous and without an independent meaning or function of its own.' " *In re L.O.F.*, 62 V.I. at 661 (quoting *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012)). This prohibition operates, for example, where a proposed reading of a statute would render an explicit appeals period meaningless. *See, e.g., Connors v. Annino*, 460

---

[2] Section 295(a) also provides a non-exhaustive list of examples of what "order[s] or rul-ing[s]" may be appealed. *See, e.g.*, 29 V.I.C. § 295(a)(5) (permitting appeals from "any de-cision or action . . . when it is claimed that the true intent and meaning of this Code or of some of its provisions have been misconstrued or wrongly interpreted").

Mass. 790, 955 N.E.2d 905, 910 (2011) (where statutes permitted any person aggrieved by the issuance of a building permit to appeal within 30 days from the date of the permit's issuance and plaintiff had notice of the permit's issuance with sufficient time to appeal within that 30-day window, plaintiff could not rely on a statutory 6-year limitations period because doing so would render the 30-day window superfluous); *cf. Monarrez v. Utah Dep't of Transp.*, 2016 UT 10, 368 P.3d 846, 853 (Utah 2016) ("[Appellant]'s interpretation would render superfluous the '[w]ithin 60 days' language of subsection (1)(a), essentially rewriting the statute to permit a claim to be litigated whenever the government chose to send a denial letter, even if the original limitations period had run."); *Wilmot Union High Sch. Dist. v. Rothwell*, 27 Wis. 2d 228, 133 N.W.2d 782, 785 (1965) (rejecting the interpretation of a statute that would have rendered an explicit 30-day appeals period meaningless).

Although legislative history is uninstructive here, One St. Peter's proposed interpretation of "receipt" not only renders section 295(a)'s 30-day appeals period meaningless, it also produces an absurd result. Nothing in the Building Code or its related regulations provide a mechanism for ensuring that all potential appellants under section 295(a) receive a tangible copy of every appealable order or ruling. Despite this silence, potential appellants to whom an order or ruling has not been directed have a means of obtaining that order or ruling because the Building Code obligates DPNR to retain copies of building permits, inspections records, and notices issued with respect to a particular project. *See, e.g.*, 29 V.I.C. § 294(b)(7) (DPNR retains one set of an applicant's building plans and specifications); 29 V.I.C. § 297(j) (DPNR "shall maintain accurate records of inspections made, of notices issued, and of actions taken by builders and owners pursuant to notices resulting from inspections. A separate record shall be maintained of all demolitions classified by former use and occupancy."). Potential appellants may, therefore, inspect and copy DPNR's orders or rulings at their leisure, and by doing so, receive a tangible copy of "the order or ruling" that they seek to appeal. The problem is that such a system relies entirely on the appellant to obtain the "order or ruling" by which they are aggrieved, allowing the appellant to choose when section 295(a)'s 30-day window opens, and rendering the existence of that timeframe meaningless.

██ Moreover, a reading of a statute that disregards a stated appeals period and creates an unlimited appeals period in its place is an absurd

result. *See, e.g., V.I. Narcotics Strike Force v. Gov't of the V.I. Pub. Emples. Rels. Bd.*, 60 V.I. 204, 214 & n.7 (V.I. 2013) (observing that an "absurd result," in the statutory construction context, refers to an interpretation of a statute that would be "clearly inconsistent with the Legislature's intent" and finding that an interpretation of a statute that would "undermin[e] the entire regulatory regime established in" a chapter of a title of the Virgin Islands Code would produce an absurd result (citing *Gilbert v. People*, 52 V.I. 350, 365 (V.I. 2009))); *Butler*, 780 S.E.2d at 280 ("An absurd result describes situations in which the law [being construed] would be internally inconsistent or otherwise incapable of operation." (citation and internal quotation marks omitted)); *see also, e.g., Noland Health Servs., Inc. v. State Health Planning & Dev. Agency*, 44 So. 3d 1074, 1079 (Ala. 2010) (rejecting as absurd the reading of a statute that would create "an unlimited period in which to seek judicial review" of an agency's decision); *In re D.F.*, 208 Ill. 2d 223, 802 N.E.2d 800, 806, 280 Ill. Dec. 549 (2003) (rejecting as absurd a reading of a statute that would replace a statutorily-prescribed nine-month window with an unlimited period of time in which to assess a parent's reasonable efforts to correct conditions that led to the removal of a child from that parent's custody); *Borden, Inc. v. Sharp*, 888 S.W.2d 614, 618 (Tex. App. 1994) (rejecting as absurd an interpretation of a statute that would create an indefinite limitations period for filing tax refund claims). Since nothing in title 29 or the related regulations obligates DPNR to distribute all appealable orders or rulings to all potential appellants, and since those appellants would otherwise have to rely on their own initiative to obtain the aggravating order or ruling, requiring that each appellant receive a tangible copy of the order or ruling they seek to appeal before triggering section 295(a)'s 30-day window allows the appellant to delay their acquisition of the order or ruling — and consequently, their appeal — indefinitely.

Because the Legislature indicated that appeals under section 295(a) must be taken within a specific time, we cannot conclude that the Legislature intended to employ a definition of "receipt" that renders a stated time for appealing meaningless while simultaneously creating an unlimited appeals period. Moreover, in enacting the Building Code, the Legislature intended "to safeguard life and limb, property, and public welfare." 29 V.I.C. § 292(a). A definition of receipt that allows an appellant to indefinitely postpone a challenge to an order or ruling that imperils such interests runs contrary to the very purpose of the Building Code.

928

■ A more reasonable interpretation is that the Legislature intended for "receipt" to occur under section 295(a) when the appealing party is chargeable with actual or constructive knowledge of the order or ruling to be appealed. *See Arkae Dev., Inc. v. Zoning Bd. of Adjustment of City of Ames*, 312 N.W.2d 574, 577 (Iowa 1981) (explaining that "courts have almost uniformly held that time to file an appeal with a zoning board of adjustment commences when the appealing party is chargeable with notice or knowledge of the decision complained of"); *Richardson v. Board of Appeals of Chilmark*, 81 Mass. App. Ct. 912, 969 N.E.2d 727, 728-29 (2012) ("[A] party with adequate notice of an order or decision that violates a zoning provision must appeal that order or decision to the appropriate permit granting authority within the thirty-day period allotted for such an appeal. . . . Adequate notice may be actual or constructive." (citations omitted)). Such an interpretation not only preserves the operation of the 30-day appeals period and eliminates the possibility of an indefinite appeals period, it also effectuates the subject phrase of the statute, which literally permits "any person who feels that an injustice has been done him" to appeal under section 295(a). 29 V.I.C. § 295(a); *see Fox v. Park City*, 2008 UT 85, 200 P.3d 182, 188 (Utah 2008) ("A right to appeal a decision is meaningless . . . if the person possessing the right has no actual or constructive notice of the decision.").

■ Applying this interpretation of section 295(a)'s receipt requirement to facts before us, we conclude that the Superior Court did not err in affirming the BLUA's dismissal of One St. Peter's appeal, because One St. Peter was chargeable with actual notice more than 30 days before it appealed to the BLUA. Regardless of when One St. Peter should have known that DPNR permitted Tree Limin' to construct a zip line, the record is clear that One St. Peter actually knew that DPNR had approved Tree Limin's plans by May 29, 2012, the day on which One St. Peter's attorney wrote to Tree Limin' objecting to the construction and operation of "a commercial zip line business."[3] At the very latest, One St. Peter should have filed its notice of appeal with the BLUA within thirty days of its May 29, 2012 letter, by June 28, 2012. But One St. Peter did not file

---

[3] One St. Peter argues that "the Superior Court erred in concluding that [it] had received adequate notice of DPNR's decision." This argument is meritless in light of the factual allegations contained in One St. Peter's May 29, 2012 letter to Tree Limin'. The record is clear that, by May 29, 2012, One St. Peter knew what Tree Limin' was constructing.

its notice of appeal until July 17, 2012, well outside of the 30-day window prescribed by section 295(a). Accordingly, the BLUA did not err in dismissing One St. Peter's petition as untimely, and the Superior Court did not err in affirming the BLUA's decision.[4]

## IV. CONCLUSION

■ Although section 295(a) describes what an appellant must receive before appealing, it does not describe how the appellant must receive it. Given this ambiguity, we must interpret section 295(a)'s receipt requirement in a manner that is harmonious with the remainder of the statute. Under One St. Peter's proffered interpretation, the 30-day appeals period in section 295(a) not only becomes superfluous, but application of the entire section produces an absurd result by creating an unlimited period of time for appellants to challenge the orders or rulings issued by DPNR under the Building Code. Because of these peculiarities, we reject One St. Peter's interpretation, and instead interpret section 295(a)'s receipt requirement to mean that an appellant receives "the order or ruling complained of" when he is chargeable with actual or constructive notice of that order or ruling. Under that interpretation, One St. Peter's appeal to the BLUA was untimely because it was taken more than 30 days after One St. Peter had actual knowledge that DPNR had granted Tree Limin' a building permit for the construction of a zip line. Accordingly, we affirm the Superior Court's October 9, 2015 order.

---

[4] One St. Peter also argues that the Superior Court erred in determining that the time period set forth in section 295(a) is a jurisdictional requirement, as opposed to a waivable claims-processing rule. One St. Peter contends that this error was raised and objected to during the proceedings below. But a review of the record indicates that, before the Superior Court issued its ruling, the distinction between jurisdictional and claims-processing rules had only been raised by the commissioners during the July 11, 2013 hearing before the BLUA. One St. Peter made no objection to the commissioner's question, and made no statement concerning whether section 295(a)'s 30-day appeals period was a jurisdictional or a claims-processing rule. Nor was the distinction addressed by either party in its respective filings before the Superior Court. Consequently, One St. Peter's argument, raised for the first time on appeal, is waived. V.I. R. App. P. 4(h), 22(m). Although we retain discretion to consider such a question, *see id.*, the interests of justice do not necessitate the exercise of such discretion here. Regardless of whether the 30-day appeals period constitutes a waivable claims-processing rule, it is clear that Tree Limin' invoked the deadline in its first filing before the BLUA on August 3, 2012. Even if the 30-day period constituted a claims-processing rule, it is clear that it had not been waived in this instance. *See Thomas*, 60 V.I. at 588.