PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3115
_____

UNITED STATES OF AMERICA

v.

ROBERT DEFREITAS,
Appellant

_____

On Appeal from the District Court
of the Virgin Islands
District Court No. 3-19-cr-00010-001
District Judge:  Honorable Robert A. Molloy

_____

Argued December 8, 2021

Before: McKEE, RESTREPO, and SMITH *Circuit Judges*

(Filed: March 21, 2022)

Richard F. Della Fera [Argued]
Suite 1710
500 East Broward Boulevard

Fort Lauderdale, FL 33394
    *Counsel for Appellant*

Nathan Brooks
Adam Sleeper [Argued]
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802
    *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

SMITH, *Circuit Judge*

Robert Defreitas, an enforcement officer for the United States Virgin Islands (U.S.V.I.) Department of Licensing and Consumer Affairs, asked for sexual favors in exchange for not reporting a female immigrant who was unlawfully present in the U.S.V.I. In a one-day trial, the jury convicted Defreitas of soliciting a bribe, V.I. CODE ANN. tit. 14, § 403, and violating the Travel Act, 18 U.S.C. § 1952(a)(3). He was acquitted of a blackmail charge, 18 U.S.C. § 873.

Defreitas appeals his convictions. He asks us to vacate the District Court's judgment, or in the alternative, to certify several questions to the Supreme Court of the Virgin Islands. We decline the invitation to certify any questions, but we take this opportunity to identify several considerations that should

2

guide a court's decision of whether to certify questions to a state's highest court. Additionally, we hold that the evidence presented was insufficient to prove that Defreitas engaged in an "official act" under V.I. CODE ANN. tit. 14, § 403. As a result, we will vacate the judgment of conviction for both offenses and remand to the District Court to enter a judgment of acquittal.

## I. BACKGROUND

Defreitas was employed by the Virgin Islands Government as an officer for the Department of Licensing and Consumer Affairs. The Department engages in a variety of consumer protection measures, including ensuring compliance with licensure requirements for workers such as barbers and manicurists. *See generally* VI CODE ANN. tit. 3, § 272 (describing role of the Department). As a law enforcement officer, Defreitas had the power to issue citations to individuals who were working without a required license.

In August of 2018, Defreitas and his on-duty partner, Tiffany Grosvenor Stevens, visited Deluxe Nail Spa in St. Thomas. There, Defreitas met Lissette Yahaira Cuevas Herrera. Defreitas was wearing a white shirt with the word "Police" emblazoned on the frontAfter he asked Herrera for her "work papers," she walked to the back of the store. Defreitas followed her, and Herrera then admitted that she did not have a manicurist license and was only helping in the salon temporarily due to some worker absences. Herrera also told Defreitas that she was from the Dominican Republic and did not enter the Virgin Islands through a legal port of entry. When

3

Defreitas followed up by asking for a passport, Herrera admitted that she did not have one.

Defreitas responded by telling Herrera, "we can fix this." Supp. App. at 46. He then touched Herrera on the shoulder and said: "You have a pretty body. I think you have a way of paying." Supp. App. at 54. He asked for her phone number, but Herrera responded by intentionally giving Defreitas an incorrect number. Defreitas tested the phone number and quickly realized it was not correct. He then asked Herrera to give him her actual number, and she did so.

After Defreitas left the salon, Herrera downloaded a call-recording application on her phone. Later that day, when Defreitas called Herrera, she recorded the call—and the recording of that call was eventually played for the jury at trial. The call clearly revealed Defreitas to be soliciting sexual favors in exchange for his not reporting Herrera for a legal violation.[1] After the phone call, Herrera went to the police.

---

[1] Even a brief excerpt from the call demonstrates that Defreitas asked for sexual favors:

> Defreitas (D): You know . . . you are in trouble . . . You would have been in trouble if I-I didn't save you today.
> Herrera (H): No, I know that. That is why I got out.
> D: Okay, so, you know you owe me one?
> . . .

Defreitas was indicted under 18 U.S.C. § 1952(a)(3); 18 U.S.C. § 873; and V.I. CODE ANN. tit. 14, § 403. The indictment specified that the unlawful activity required to prove a violation of the Travel Act was bribery as defined in § 403. Appellant App. at 12 ("Robert Defreitas used a facility in interstate commerce . . . with the intent to . . . carry on . . . an unlawful activity, that is Solicitation of a Bribe by a Public Employee."). At trial, Herrera testified along with other

D: So, I am going to call you a little bit later . . . and we could see if we could meet up, okay?
H: Okay, no problem
. . .
D: . . . Wait do you live with somebody?
H: No, no, no.
D: Do you live by yourself?
H: No I live with my son.
. . .
D: Okay. So, you don't live with a man or anything?
H: Yeah, I-I-I have a husband.
. . .
D: Oh, so if I ask you for something then you probably cannot give it to me because you have a husband.
H: Oh. I don't know. I-I don't know. I just don't want any problems.
D: Well, listen. He doesn't have to know and I am not going to tell anybody.

Appellant App. at 15–18.

5

employees from the salon, as did an expert from AT&T Inc., and Defreitas's partner, Stevens. Of particular import on appeal is Stevens's testimony. When asked by the prosecutor to describe department practice for an officer who encountered someone the officer learned had entered the country illegally, she responded that "[t]he enforcement officer would have to make contact in order to have communication via report to his immediate supervisor. Then the immediate supervisor would make contact with the [sic] immigration." Supp. App. at 114.

At trial, Defreitas did not contest that he asked for sex in exchange for not reporting Herrera.

At the close of the Government's evidence, Defreitas moved for acquittal on three grounds relevant to this appeal.[2] First, Defreitas argued that he did not commit an "official act" because he did not actually *do* anything; rather, he refused to do something. Second, he asserted that sexual favors are not an "emolument, gratuity, or reward" under Virgin Islands law. Third, he claimed that § 403 is void for vagueness under the Due Process Clause. The Court denied his motion.

The District Court instructed the jury that before they could find Defreitas guilty of bribery under § 403, the Government needed to prove that he "asked for or received any emolument, gratuity, or reward, or any promise thereof that was not provided by law . . . in exchange for an official act."

[2] One additional ground pertained to the blackmail charge. As Defreitas was later acquitted of that charge, it has no bearing on the appeal before us.

6

Supp. App. at 189.  The Court did not provide the jury with a definition of "official act," nor did either party even attempt to provide a definition of "official act" to the Court prior to its jury charge.

The jury returned a verdict convicting Defreitas of bribery pursuant to V.I. CODE ANN. tit. 14, § 403 and violating the Travel Act pursuant to 19 U.S.C. § 1952(a)(3).  As we have noted, the jury acquitted Defreitas of blackmail.  In a post-trial motion for acquittal, Defreitas again raised the grounds he presented in his prior motion. And at this juncture, he asked the court to certify questions to the Supreme Court of the Virgin Islands.[3]  The Court denied this motion as well.

---

[3] Defreitas asked to certify the following four questions:

> (1) What is an "Official Act" that may be punished as a crime under 14 V.I.C. [§] 403; (2) Whether 14 V.I.C. [§] 403 criminalizes the failure to do an official act?; (3) Whether under Virgin Islands Law, sexual favors constitute an emolument, gratuity, or reward? and (4) Whether 14 U.S.C. [§] 403 is void for vagueness as applied, for failure of the statute to provide notice of the answers to these very questions.

Supp. App. at 299.

7

## II.    JURISDICTION

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.    CERTIFICATION

In addition to challenging his convictions on the merits, Defreitas asks us to certify questions on the interpretation of V.I. CODE ANN. tit. 14, § 403 to the Supreme Court of the Virgin Islands.  That Court's appellate rules provide that we may certify a question of local law for it to resolve if the question "may be determinative of the cause then pending in the certifying court and concerning which it appears there is no controlling precedent in the decisions of the Supreme Court." V.I. R. APP. P. 38.  Our local rules similarly provide that we may certify a controlling question of Virgin Islands' law to the Supreme Court of the Virgin Islands for immediate resolution. 3d Cir. L.A.R. Misc. 110.1 (2011) ("When the procedures of the highest court of a state provide for certification . . . of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court . . ..")[4]

While our rules provide for certification, we have not identified what considerations our court should take into

---

[4] Because our local rules are to be read in conformity with the Federal Rules of Appellate Procedure, "state" includes any territory.  FED. R. APP. P. 1(b).

account when deciding if certification is appropriate. Clearly, it is inappropriate to certify any state-law question solely because its outcome may control a case; federal courts are often required to make faithful predictions of how a state supreme court will rule. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 470–71 (1987); *Erie R.R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938). But we must always be mindful of the purpose behind certification: that it "does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Thus, when faced with the question, a court should consider several factors which will counsel whether certification is appropriate.

First, the relevant question's eventual resolution should be unclear and control an issue in the case. Certifying a question where the answer is clear is inappropriate and unnecessary. *See City of Houston*, 482 U.S. at 470–71. But, as we have observed, certifying a question is appropriate if we determine that we cannot predict how a state court would rule. *Oberdorf v. Amazon.com Inc.,* 818 F. App'x 138, 143 (3d Cir. 2020) (en banc) (certifying a question when we were "unable to predict how the Pennsylvania Supreme Court would rule in this dispute"). Similarly, an immaterial question should not be certified. These first-order considerations will often be dispositive. In fact, our local rules require that the question "control the outcome of a case," 3d Cir. L.A.R. Misc. 110.1 (2011), and jurisdictions within our circuit stress the importance of uncertainty in the determination of whether to accept a certified question. *See, e.g.*, N.J. CT. R. 2:12A-1 (requiring "no controlling appellate decision, or statute in this case"); DEL. R. SUP. CT. 31 (listing examples of when

9

certification is appropriate including questions of first impression and questions where there are conflicting decisions among state trial courts); PA. R.A.P. 3341 (same).

Second, courts should consider what we will broadly refer to as the "importance" of the question. These "importance" factors demonstrate a state's interest in the interpretation of its own law as well as our interest in supporting cooperative judicial federalism. For example, open questions of state constitutional law should nearly always be left to the state courts. *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997) ("It is . . . imperative that any state constitutional law issues in this case be decided by the state supreme court."). Likewise, a state's high court is the most appropriate forum to weigh competing state public policy interests. *See, e.g.*, *Chauca v. Abraham*, 841 F.3d 86, 93 (2d Cir. 2017) ("[I]mportant state issues require value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make." (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 74 (2d Cir. 2012))) (internal quotation marks omitted); *Schuchart v. La Taberna Del Alabardero, Inc.*, 365 F.3d 33, 37 (D.C. Cir. 2004). Further, issues that are likely to recur or which could lead to forum shopping should be certified for an immediate and dispositive resolution. *Schuchart*, 365 F.3d at 37; *In re Badger Lines*, 140 F.3d 691, 698 (7th Cir. 1998).

Finally, courts should consider judicial economy. Our consideration of judicial economy encompasses the actions of the parties as well as the cost effectiveness of certification. And while such concerns may not be as weighty as federalism

10

concerns, they are necessary to ensure that certification remains an efficient method to resolve disputes instead of a delay tactic in the hands of sophisticated litigants. For example, a court should view with skepticism a party's request for certification when that party had originally invoked federal jurisdiction. *Powell v. U.S. Fid. & Guar. Co.*, 88 F.3d 271, 273 n.3 (4th Cir. 1996); 17A VIKRAM D. AMAR, CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 4248 (3d ed. 2021). Another factor to consider is the timeliness of a request for certification. *See Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1892 n.7 (2018) (declining to certify when request was made "very late in the day"). After all, certification is not an opportunity for a do-over. Requests to certify made by a party only after an adverse decision compel a court to inquire of the party: Why now? *State Auto Prop. & Cas. Ins. Co. v. Hagris*, 785 F.3d 189, 194 (6th Cir. 2015) ("[C]ertification is disfavored when it is sought only after the district court has entered an adverse judgment."); *Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("A party should not be allowed 'a second chance at victory' through certification by the appeals court after an adverse district court ruling." (quoting *In re Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984))).[5]

---

[5] Just because a court has entered judgment, however, does not by itself mean that certification was requested out of time or as an "insurance policy." We are mindful that every state has different procedures and several states do not allow certification from district courts. *See* Jason A. Cantone & Carly Griffin, *Certified Questions of State Law: An*

11

We do not suggest that the foregoing list is exhaustive, nor that any one of the considerations we have set forth should be considered dispositive. Yet the presence of even one may weigh on the decision to certify. *See generally Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18 (D.C. Cir. 2014).

With all of these factors in mind, we confront the primary legal question presented: whether Defreitas's decision to not report Herrera for an immigration violation was an "official act" as used in V.I. CODE ANN. tit. 14, § 403.[6] That question is likely dispositive of the entire litigation.

Further, we know of no case in which the Virgin Islands Supreme Court has addressed the "official act" question, but we find sufficient guidance from the federal courts.[7] As we explain below, "official act" is a term with common law roots, and federal precedent interpreting "official act" serves as a

---

*Examination of State and Territorial Authorizing Statutes*, FED. JUDICIAL CTR. (June 2020).

[6] We examine this question now because if we were to certify, it is the question (or a close correlate) that we would be asking the Supreme Court of the Virgin Islands to resolve. The other questions were not pressed in this litigation. Additionally, whether the statute is void for vagueness is a question of federal law and thus not appropriate for certification.

[7] We apply the *Erie* Doctrine to criminal statutes within the Virgin Islands. *United States v. Fontaine*, 697 F.3d 221, 227 (3d Cir. 2012).

12

useful guide when interpreting § 403. *Infra* Section IV. Indeed, counsel for Defreitas conceded that it was unlikely the Supreme Court of the Virgin Islands would fail to follow United States Supreme Court teachings on "official act"— precedent that we are in at least the same position as the Supreme Court of the Virgin Islands to accurately interpret. Oral Arg. Tr. at 6–7. So our *Erie* guess is hardly an inappropriate intrusion into Virgin Islands' jurisprudence.

But because our resolution of the question will be determinative of this case, we now consider its importance. This case does not call on us to interpret an issue of state constitutional law,[8] nor does the issue seem to be one that will commonly recur. In fact, the parties present no precedent from the local courts of the Virgin Islands that has interpreted this statute. Such silence in the Virgin Islands' jurisprudence suggests that the statute is not commonly utilized by prosecutors there. In addition, as a criminal statute, our resolving this question carries little risk of forum shopping by litigants. And while there are some policy interests at play, such as providing sufficient notice to defendants, we see no question of state public policy which would be better resolved by the Supreme Court of the Virgin Islands.

Finally, the timing of the request to certify gives us pause. At oral argument, counsel for Defreitas admitted that the request to certify could have been made in a pretrial motion. Oral Arg. Tr. at 12. It was not. Indeed, counsel did not raise

---

[8] The Virgin Islands does not have a constitution, though an equivalent would be the Organic Act. 48 U.S.C. § 1541.

13

the issue of certification during his pre-verdict motion for acquittal even though in that same motion he directly challenged the interpretation of "official act" as used in § 403. The request for certification came only after the jury found Defreitas guilty.

In short, we have a question the resolution of which is uncertain. Yet as a federal court, we are institutionally well-situated to resolve it and to provide a well-informed interpretation of § 403. The question does not implicate important issues of state policy nor of federalism interests. And—again—it was requested only after an adverse judgment. We therefore decline to certify this question to the Supreme Court of the Virgin Islands and now consider the merits.[9]

---

[9] Our decision not to certify is by no means a reflection on the Supreme Court of the Virgin Islands. We hold that Court in high regard, and we have no doubt that it would efficiently resolve the question. Indeed, we noted in our Report on the Virgin Islands Supreme Court, "[t]he Court's opinions objectively define the issues before it with precision, thoroughly review the relevant case law, and explain its resolution of those issues in a manner that facilitates appellate review, provides helpful guidance to trial court judges, and promotes public confidence in the work of the Court." Judicial Council of the U.S. Court of Appeals for the Third Circuit, *Report on the Virgin Islands Supreme Court*, 15 (2012), *available                                          at* https://www.vicourts.org/publication_and_reports/reports.

14

## IV. "OFFICIAL ACT"

Defreitas argues that the evidence presented was insufficient to prove that he engaged in an "official act" under V.I. CODE ANN. tit. 14, § 403. Specifically, he argues that as an enforcement officer for the Department of Licensing and Consumer Affairs he had no duty to report that Herrera was unlawfully present in the United States. He reasons, then, that his refusal to report Herrera cannot be an "official act." Defreitas failed to raise this argument before the District Court, so we review this sufficiency question for plain error. FED. R. CRIM. P. 51. We use the familiar four-part framework from *Olano*, reversing only when there is an (1) "error;" (2) "that is plain;" (3) "that affect[ed] substantial rights;" and (4) that failure to correct the error would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)) (internal quotation marks omitted). "Ordinarily, when the government has failed to prove each essential element of the crime charged, we will reverse under *Olano*'s fourth prong." *United States v. Johnson*, 19 F.4th 248, 256 (3d Cir. 2021).

As with any question of statutory interpretation, we begin by examining the text. *In re Adoption of L.O.F.*, 62 V.I. 655, 661 (2015). To be convicted for soliciting a bribe under this statute, the prosecution must prove that an individual is (1) "a judicial or other public officer or employee;" (2) who "asks or receives an emolument, gratuity, or reward, or any promise thereof, except such as may be authorized by law;" (3) "for doing any official act." V.I. CODE ANN. tit. 14, § 403. At this stage of the litigation, the only argument before us is whether

15

refraining from reporting Herrera was an "official act" under V.I. CODE ANN. tit. 14, § 403.[10]

"Official act" is a term of art with its roots in the common law. *See generally United States v. Birdsall*, 233 U.S. 223, 230 (1914); *State v. Ellis*, 33 N.J.L. 102, 106–07 (1868); James Lindgren, *The Elusive Distinction Between Bribery and Extortion: From the Common Law to the Hobbs Act*, 35 UCLA L. REV. 2355, 2373 (1988). Thus, we must assume that the legislators who chose to use the term "official act" meant to adopt its meaning as derived from common law. *Morissette v. United States*, 342 U.S. 246, 263 (1952). We expect that the interpretation of "official act" will remain consistent even when it is used in other federal or state statutes.[11]

---

[10] While a question was raised at oral argument regarding whether refraining from performing an "official act" is prohibited by this statute, that issue was not preserved in Defreitas's briefs and is not before us. Oral Arg. Tr. at 34–36.

[11] Many federal statutes either use the term "official act" or are interpreted through the use of the term. For example, the federal bribery statute, 18 U.S.C. § 201(b)(2)(A), provides that a public official who accepts anything of value "in return for . . . being influenced in the performance of any official act" is guilty of bribery. Honest Services Fraud is defined in reference to the federal bribery statute. *Skilling v. United States*, 561 U.S. 358, 412–14 (2010); *United States v. Silver*, 948 F.3d 358, 551 (2d Cir. 2020). Courts have recognized that extraction of a payment in return for performance of an official act can support

16

The Government, relying on *United States v. Ferriero*, 866 F.3d 107, 127–28 (3d Cir. 2017), argues that we should not consider federal law when interpreting § 403. In *Ferriero*, we refused to import the definition of federal bribery into New Jersey's bribery statute. 866 F.3d at 127–28. Our refusal was hardly surprising though, since the New Jersey statute does not include the term "official act." N.J. STAT. ANN. § 2C:27-2 (defining bribery as accepting "[a]ny benefit as consideration for a decision, opinion, recommendation, vote or exercise of discretion of a public servant, party official or voter on any public issue or in any public election"). Additionally, the *Ferriero* panel noted that the specificity of the New Jersey statute obviated the vagueness concern discussed in *McDonnell v. United States* which rendered much of *McDonnell*'s analysis inapplicable. *Ferriero*, 866 F.3d at 128 (citing *McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016)). Section 403, however, is significantly less detailed than the New Jersey statute. Thus, while this Court correctly concluded that federal law was unhelpful in *Ferriero*, federal law does provide us with helpful guidance.

The Supreme Court has defined an "official act" in *McDonnell* as "a decision or action on a 'question, matter, cause, suit or controversy,'" and that "question, matter, cause, suit or controversy . . . [must] be something specific and focused that is 'pending' or 'may by law be brought' before a public official." *McDonnell*, 136 S. Ct. at 2371–72. The Court

a Hobbs Act extortion conviction. 18 U.S.C. § 1951(b)(2); *Evans v. United States*, 504 U.S. 255, 268 (1992); *United States v. Repak*, 852 F.3d 230, 252–53 (3d Cir. 2017).

17

further clarified that the terms "pending" or "may by law be brought"

> suggest something that is relatively circumscribed—the kind of thing that can be put on an agenda, tracked for progress, and then checked off as complete. In particular, "may *by law* be brought" conveys something within the specific duties of an official's position—the function conferred by the authority of his office.

*Id.* at 2369. In other words, an "official act" must be a part of an official's legal duties.

The conclusion that an official act must be an action encompassed by an official's legal duties is confirmed by our Court's analysis in *United States v. Repak*, 852 F.3d 230, 254 (3d Cir. 2017). In that case the defendant, a director of a local government redevelopment agency tasked with the responsibility of awarding contracts, accepted free services from corporations. In return, he continued to award the corporations new contracts. *Id.* at 238. When the defendant argued that he did not commit an "official act," we noted that the agency he directed was "undisputedly tasked with the responsibility of awarding contracts," and as a result, his decision to influence the awarding of contracts was clearly an "official act." *Id.* at 254. Thus, our precedent demonstrates that we look to both the official powers of the relevant agency and the defendant's role in that agency to determine if the actions alleged were "something within the specific duties of

18

an official's position." *Id.* (quoting *McDonnell*, 136 S. Ct. at 2369).[12]

The Government argues that Defreitas's duty to report immigration violations derives from V.I. CODE ANN. tit. 3, § 272, which identifies the general authority of the Department of Licensing and Consumer Affairs. Specifically, the Government relies on § 272(a)(8) which states the Department must

> enforce all laws relating to the advertising, offering for sale and the sale of commodities, goods, wares and services; receive and evaluate complaints and initiate its own investigations

---

[12] The fact that an "official act" must be part of an official's duties coincides with how the term was defined in early state-court cases. *See, e.g.*, *People v. Jackson*, 191 N.Y. 293, 299 (1908) (holding that an act was an "official action" as the official could only solicit a bribe because "[h]e dealt with a subject over which he had jurisdiction."); *Selvidge v. State*, 72 S.W.2d 1079, 1080 (Tex. Crim. App. 1934) ("To constitute bribery of a public official it must be made to appear that the official for a valuable consideration or reward agreed to refrain from an official act *imposed upon him by law*.") (emphasis added) *cited with approval by Gandara v. State*, 527 S.W.3d 261, 269 (Tex. 2016). This further demonstrates that federal precedent has interpreted "official act" consistent with its common law roots. That buttresses our strong view that the Supreme Court of the Virgin Islands would not depart from the common law reasoning of *McDonnell*.

19

relating to these matters and take appropriate action, including referral to a federal or territorial department or agency.

The Government concerns itself only with the latter half of that subsection, "including referral to a federal . . . department or agency." That is far too narrow a view of this clause. "[T]ake appropriate action," necessarily refers back to the first part of the subsection, "laws relating to the advertising, offering for sale, and the sale of commodities, goods, wares and services." So a plain reading of the text leads us to conclude that an officer has a duty to act only when required by a "law[] relating to" consumer protection. *See One St. Peter, LLC v. Bd. of Land Appeals*, 67 V.I. 920, 924 (2017) ("[W]e read the words and phrases of the statute in their context, and construe them according to the common and approved usage of the English language.").

Our reading comports with the rest of the Section, which requires the Department to protect the rights of consumers by recommending legislation, promoting quality standards, and representing consumers before private or public boards. V.I. CODE ANN. tit. 3, § 272(a). The Department, however, does not have some freestanding duty to report any conceivable or possible violation of federal law, no matter its connection to consumer rights.[13] To accept the Government's reading would untether the "including referral" phrase from the

---

[13] Indeed, the Government makes no attempt here to connect policing immigration laws to other consumer protection measures.

20

rest of § 272 and subsection (a)(8). It would also make the Department responsible for the enforcement of *all* federal laws, everything from the Endangered Species Act to the False Claims Act. We refuse to accept that the legislature intended to create such roving commissions.

The Government then takes a fallback position: It argues that custom is sufficient to establish an agency's duties. To reach this conclusion, the Government relies on *Birdsall*, yet *Birdsall* cannot bear the weight the Government places upon it. Birdsall was an attorney who represented individuals accused of illegally selling alcohol to American Indians. 233 U.S. at 227–28. In an attempt to obtain a recommendation of clemency for his clients, he paid two officials who worked for the Commissioner of Indian Affairs, who was in turn under the supervision of the Department of the Interior. *Id.* at 228. The Supreme Court, citing the regulations of the Department of the Interior, declared that the relevant officers had a duty "to inform the said Commissioner whether or not the effective suppression of the liquor traffic with and among Indians would be furthered or prejudiced by [e]xecutive or judicial clemency in any particular case." *Id.* (internal quotation marks omitted).

The Court concluded that "[e]very action that is *within the range of official duty* comes within the purview of these sections." *Id.* at 230 (emphasis added). But it provided a gloss on that conclusion, stating:

> To constitute it official action, it was not necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the Department under whose

21

authority the officer was acting. Nor was it necessary that the requirement should be prescribed by a written rule or regulation. It might also be found in an established usage which constituted the common law of the Department and fixed the duties of those engaged in its activities. In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery.

*Id.* at 230–31 (citations omitted). In other words, custom may inform the understanding of official duties when those "duties [are] not *completely defined* by written rules," but custom *alone* cannot establish what constitutes an "official act." *Id.* at 231 (emphasis added). In *Birdsall*, advising on clemency was "within the range of [the relevant official's] official duty," so the Court reversed the dismissal of his indictment and remanded for further prosecution.

Here, even assuming that the testimony of Defreitas's partner established a custom, that evidence was insufficient to prove that Defreitas's decision not to report Herrera was an "official act." There existed no internal regulation, guideline, or statute that advised the Department to engage in any activity related to the policing of immigration laws. No evidence of any such authority was provided to the jury, and therefore, no reasonable juror could have found that Defreitas committed an "official act." The evidence here was insufficient to prove that

22

Defreitas violated V.I. CODE ANN. tit. 14, § 403 and 18 U.S.C. § 1952(a)(3).[14]

---

[14] In Hobbs Act extortion cases, we have held that the absence of authority to perform an "official act" is not a defense when the bribe payor has a reasonable belief about an official's power to perform or withhold such an act. *See, e.g., United States v. Fountain,* 792 F.3d 310, 316-17 (3d Cir. 2015) (upholding a Hobbs Act extortion conviction where the evidence proves "(1) that the payor made a payment to the defendant because the payor held a reasonable belief that the defendant would perform official acts in return, and (2) that the defendant knew the payor made that payment because of that belief."); *United States v. Bencivengo*, 749 F.3d 205, 212-13 (3d Cir. 2014) (concluding that where an official agrees to, or his position would allow him to influence, a government decision, and the victim reasonably believes that the official "wields such influence, that is sufficient to sustain a conviction, regardless of whether the official holds any *de jure or de facto* power over the decision"); *United States v. Mazzei*, 521 F.2d 639, 643 (3d Cir. 1975) (en banc). While we doubt that these cases are applicable to § 403, we do not reach that conclusion here because the Government did not charge Defreitas with Hobbs Act extortion and failed to argue that these cases govern our analysis of § 403. Rather, it charged Defreitas with a Travel Act violation under 18 U.S.C. § 1952 and the territorial offense of bribery in § 403. As we pointed out in *Bencivengo*, in rejecting the defendant's double jeopardy

23

Therefore, we return to *Olano*. 507 U.S. at 732. The first three factors are met by the error in this case. *See Johnson*, 19 F.4th at 256. And when the evidence is insufficient to sustain a conviction, we generally will reverse under the fourth factor. *Id.* We see no reason to depart from that general rule here and will therefore vacate the judgment of conviction.[15]

_____

claim, the elements necessary to prove a Hobbs Act violation and a Travel Act violation are not the same. 749 F.3d at 225. Here, the Travel Act violation based on bribery did not require proof of extortion and that a public official received some payment, emolument or gratuity. Rather, it actually required proof that Defreitas received payment, an emolument or gratuity "for doing any official act." V.I. CODE ANN. tit. 14. § 403. As a result, Herrera's reasonable belief of Defreitas's authority as a public official may be sufficient to establish a Hobbs Act violation, *see Fountain*, 792 F.3d at 316–17, but it is not sufficient to establish that Defreitas's actions were "official acts" for purposes of § 403 bribery charge, which was the predicate of the Travel Act violation.

[15] Defreitas made several other challenges to his conviction, but our conclusion that the evidence presented was insufficient to convict him makes it unnecessary for us to reach those issues.

24

## V.    CONCLUSION

As the evidence was insufficient to prove bribery under V.I. CODE ANN. tit. 14, § 403, it is also insufficient to prove a violation of the Travel Act under 18 U.S.C. § 1952(a)(3).  We note that blackmail as defined by 18 U.S.C. § 873 seemed to be a fairly applicable charge.  But by bringing the bribery charge, the Government complicated the evidence and law even though it made no effort to define "official act," an essential element of § 403.  Its charging decision did not pay off.  Defreitas's conduct—targeting a vulnerable individual in an attempt to receive sexual favors—was despicable and may have well been illegal.  But it was not bribery.  We will vacate the judgment below and direct the District Court to enter a judgment of acquittal.

25