**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2420
_____

PAMELA L. KERN,
                    Appellant

v.

DAS COMPANIES INC.

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:22-cv-01128)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on June 13, 2025

Before: CHAGARES, *Chief Judge,* PORTER, and AMBRO, *Circuit Judges*.

(Filed: July 31, 2025)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

Pamela Kern is a 59-year-old woman suing her former employer for age discrimination under federal and Pennsylvania law. The District Court granted summary judgment for the employer as to both her federal-law and state-law claims, applying the same analytical framework to each.

With regard to her federal age-discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Kern argues that the District Court failed to consider all the relevant evidence in the light most favorable to her and that summary judgment was improper. With regard to her state-law age-discrimination claim under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951 *et seq.* ("PHRA"), Kern argues that liability under the PHRA is assessed differently than under the ADEA, so analyzing those claims together was legal error. Specifically, she argues that under the PHRA employers are liable if age was a "motivating factor" for the adverse employment decision and employers have the burden of demonstrating that the plaintiff was not the "best able and most competent" person for the job. Kern accordingly filed a motion to certify two questions to the Pennsylvania Supreme Court.[1] The

---

[1] Those questions are:

(1) Whether age discrimination proscribed within the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(a), can be proven with specific facts such that a reasonable jury could find age was a motivating factor, which is the same standard applied to the other protected classes set forth in the PHRA?

(2) Whether the PHRA language of "best able and most competent" in 43 P.S. § 955(a) imposes a higher burden of proof on the employer in discrimination

2

Pennsylvania Human Relations Commission ("PHRC"), the state agency authorized with administering and enforcing the PHRA, submitted an amicus brief in support of Kern's position that the PHRA and ADEA impose different standards of liability in age-discrimination cases.

Because we conclude that Kern has not provided sufficient facts to prevail under even the motivating-factor standard and because we predict that the Pennsylvania Supreme Court would reject her contention that the PHRA's "best able and most competent" language requires employers to make an additional showing in disparate-treatment cases, we will deny her motion to certify two questions to the Pennsylvania Supreme Court. We will also affirm the District Court's grant of summary judgment.

I

A

At the onset of the COVID-19 pandemic, Kern was employed as a "Content Coordinator" at DAS Companies, Inc. in its marketing department. DAS is a portfolio company that owns and manages several travel-related brands. Anticipating a dramatic decrease in the demand for its travel-related products due to the pandemic, DAS' CEO, Michael Abel, initiated a series of layoffs. Abel delegated individual layoff decisions to the various department heads, but stipulated that those decisions should maximize financial savings and minimize interruptions of day-to-day operations.

cases and does not mean the employer merely needs to provide any legitimate non-discriminatory reason for making the employment decision?

App. Ct. Dkt. No. 20 at 1–2.

3

Charles White, the department head for marketing, selected Kern (age 59), Christopher Vang (age 28), and Danielle Crockett (age 32) for layoffs. On April 6, Kern, Vang, Crockett, and two other employees were let go in the first phase of layoffs. Between April 20 and May 8, twenty-nine more employees were let go in two subsequent phases of layoffs.

DAS expressed hope that Kern's layoff would be temporary and continued her healthcare benefits, but ultimately terminated her employment on May 31. And although DAS recalled several other laid off employees, it never recalled Kern.

Just a couple months later, DAS' prospects had turned around. In March 2020, it was classified as an essential business exempting it from various pandemic-related restrictions, and by the summer, business even appeared to be "picking up." App. 236–37. Around that time, DAS posted a "Content & Asset Coordinator" position that was similar to Kern's "Content Coordinator" position. Reviewing the job description of the new position, Wendy Stoviak, the Vice President of Human Resources, asked, "Is this Pam's job?" App. 856. Gina Bonafede, Kern's former direct supervisor, responded that the position "does include some foundational elements of Pam's role," but noted several differences. App. 855.

Kern submitted an application for the new position, but was never interviewed. Meanwhile, DAS recruited and interviewed Andrew DeBord (age 22) for the position. DeBord was considered a "good fit," but was hired for a different role at the company. In fact, DAS never hired anyone for the Content & Asset Coordinator position at that time

4

and removed the job posting in mid-August. Kern applied for other positions at DAS, but was not asked to interview for any of them.

At about the same time DAS removed the posting, it was dealing with "a backlog of product item set-ups." Appellee's Br. 5. DAS' CEO asked "all departments heads" for "help dig[ging] out of the Item Set Up hole." App. 250 (emphasis omitted). Progress proved "slow," and for a moment DAS considered re-hiring Kern. App. 249. Instead, it brought on a temporary worker, Tracey Torres (age 39), from a staffing agency. After Torres was assigned to DAS for more than a year, DAS hired her for the Content & Asset Coordinator position.

B

In mid-August 2020, Kern learned that DAS had interviewed two people for the Content & Asset Coordinator position. She retained counsel and filed a charge of discrimination with the Equal Employment Opportunity Commission and the PHRC on October 5, 2020. Kern initiated the present lawsuit on July 20, 2022, alleging discrimination and retaliation in violation of the ADEA and PHRA.

After discovery, DAS moved for summary judgment. The District Court considered, but ultimately rejected, Kern's and the PHRC's contention that for discrimination claims the PHRA imposes a different standard of liability than the ADEA. Consequently, it analyzed Kern's ADEA and PHRA discrimination claims under the same analytical framework. The District Court granted DAS' motion for summary judgment as to all Kern's claims.

Kern timely appealed. She also moved to certify two questions of Pennsylvania law to the Supreme Court of Pennsylvania.

## II

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367(a). We have jurisdiction under 28 U.S.C. § 1291.

Our review of a district court's grant of summary judgment is plenary, applying the same standard as the district court. *Qin v. Vertex, Inc.*, 100 F.4th 458, 469 (3d Cir. 2024). "Under that standard, summary judgment is appropriate only if, construed in the light most favorable to the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." *Id*. "A fact is material if it might affect the outcome of the suit under the governing law." *Id*.

"The moving party has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015). "Once the moving party has done so, to avoid the entry of summary judgment against them, the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Id*.

## III

This Court has said that "the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fasold v. Justice*, 409 F.3d 178, 184 n.8 (3d Cir.

6

2005) (quoting *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002)); *see also Willis*, 808 F.3d at 643 & n.4. Yet some of our prior cases might have been too quick to see overlap between the PHRA and its federal analogs. *See, e.g.*, *Willis*, 808 F.3d at 643 (concluding that the PHRA is interpreted identically to the ADEA without analyzing in detail the text of the provisions at issue); *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (same); *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 150 n.1 (3d Cir. 2017) (same). We also recognize that Kern and the PHRC have pointed to language that, in their view, suggests that the PHRA should be interpreted differently than the ADEA.

We will deny Kern's motion to certify her question asking whether the PHRA imposes a different standard of liability than the ADEA in age-discrimination cases since we are convinced that her claim would fail under even the motivating-factor standard she surges. We will also deny Kern's motion to certify her question asking whether the PHRA's "best able and most competent" language requires an employer to make an additional showing, because we predict that the Pennsylvania Supreme Court would reject that contention. Accordingly, we will affirm the District Court's grant of summary judgment as to her age-discrimination claim under the PHRA. For essentially the same reasons, we will also affirm the District Court's grant of summary judgment as to her age-discrimination claim under the ADEA and her retaliation claims under the PHRA and ADEA.

## A

### 1

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The PHRA makes it unlawful

> [f]or any employer because of . . . age . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual . . . or to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual is the best able and most competent to perform the services required.

43 Pa. Cons. Stat. § 955(a). In *Gross v. FBL Financial Services, Inc.*, the Supreme Court held that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision" in order to prevail on an age-discrimination claim under the ADEA. 557 U.S. 167, 176 (2009). In so doing, the Supreme Court decoupled the standard of liability in age-discrimination cases from the standard of liability for other protected classes covered by Title VII. Under Title VII, a plaintiff need only prove that "race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

That Title VII explicitly prohibits employment decisions motivated in part by race, color, religion, sex, or national origin harkens back to the Supreme Court's splintered decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). There, "[s]ix Justices ultimately agreed that if a Title VII plaintiff shows that discrimination was a motivating or a substantial factor in the employer's action, the burden of persuasion should shift to

8

the employer to show that it would have taken the same action regardless of that impermissible consideration." *Gross*, 557 U.S. at 171–72 (citing *Price Waterhouse*, 490 U.S. at 258 (plurality opinion); *id*. at 259–60 (opinion of White, J.); *id*. at 276 (opinion of O'Connor, J.)) (internal quotation marks omitted). Congress rejected that reading and amended Title VII accordingly as part of the Civil Rights Act of 1991 to include § 2000e-2(m). 105 Stat. 1071, 1075. Relying on the fact that Congress amended Title VII, but not the ADEA, and the ADEA's use of the words "because of," which generally indicate but-for causation, *Gross* held that the but-for standard governed ADEA discrimination claims. *Gross*, 557 U.S. at 176.

a

The parties and amicus disagree about the appropriate standard under the PHRA. Kern and the PHRC argue for the motivating-factor standard, whereas DAS argues for the but-for standard. The Pennsylvania Supreme Court has not yet clarified which standard applies in age-discrimination cases brought under its own anti-discrimination laws. Although that Court has embraced the burden-shifting framework of federal anti-discrimination laws in PHRA cases, it did so before *Gross* unhitched the standard for liability in age-discrimination cases from Title VII cases. *Gen. Elec. Corp. v. Pa. Hum. Rels. Comm'n*, 365 A.2d 649, 654–57 (Pa. 1976). Kern and the PHRC point to *Spanish Council of York v. Pennsylvania Human Relations Commission*, an intermediate state appellate court decision, as evidence that the motivating-factor standard applies to PHRA cases. 879 A.2d 391 (Pa. Commw. Ct. 2005). But *Spanish Council* does little to persuade us either way because it was a race-discrimination case decided before *Gross*. *Id*. at 399.

9

Adding to the uncertainty is the fact that Pennsylvania courts accord deference to the PHRC's interpretation of the PHRA. *See* 1 Pa. Cons. Stat. § 1921(c)(8); 43 Pa. Cons. Stat. § 956; *see also Winslow-Quattlebaum v. Md. Ins. Grp.*, 752 A.2d 878, 881 (Pa. 2000). And here, the PHRC as amicus has indicated that it interprets the PHRA to incorporate the motivating-factor standard in age-discrimination cases. Amicus Br. for the Pa. Hum. Rels. Comm'n 5.

Notwithstanding uncertainties about how the Pennsylvania Supreme Court would resolve this matter of state law, the record persuades us that Kern's age-discrimination claim under the PHRA fails under even the heightened standard she proposes. Because certification is only appropriate where it "will control the outcome of a case," we will accordingly deny Kern's motion to certify that question to the Pennsylvania Supreme Court. 3d Cir. L.A.R. 110.1.

b

The parties additionally disagree about the effect that "the best able and most competent to perform" language has on the burden-shifting framework in discrimination cases brought under the PHRA. Kern argues that after a plaintiff has established a *prima facie* case, the "best able and most competent to perform" clause requires the employer to do more than proffer a legitimate, non-discriminatory reason for the adverse employment action in order to shift the burden back to the plaintiff. According to her, the employer must also produce evidence that the "person selected"—*i.e.*, the person that benefitted from the alleged discrimination—was in fact "the best able and most competent" person for the job. App. Ct. Dkt. No. 28 at 12–13. DAS counters that under Pennsylvania law

10

this language has been interpreted to create an affirmative defense in disparate-impact cases, but does not alter the burden-shifting framework applicable in disparate-treatment cases.

The Pennsylvania Supreme Court itself has observed that "the 'best able and most competent' language of [the PHRA] has been the source of considerable confusion." *Allegheny Hous. Rehab. Corp. v. Pa. Hum. Rels. Comm'n*, 532 A.2d 315, 317 n.2 (Pa. 1987); *see also Pa. Hum. Rels. Comm'n v. Johnstown Redevelopment. Auth.*, 588 A.2d 497, 501 n.3 (Pa. 1991) (noting "that applicability of the phrase 'best able and most competent' has caused considerable consternation"). Kern's position continues that apparent tradition of confusion. There has been much disagreement about whether that language imposes an additional burden on *the plaintiff* at the point when he must establish a *prima facie* case. There has not been, however, disagreement about whether that language imposes an additional burden on *the employer*, which is Kern's contention.

In *Winn v. Trans World Airlines, Inc.* the Pennsylvania Supreme Court considered "whether the complainant in an employment discrimination case should be required as part of his or her prima facie case to prove he or she was best able and most qualified to perform the services required." 484 A.2d 392, 393 (Pa. 1984) (Opinion in Support of Affirmance of Nix, C.J.). The Court was evenly divided and failed to resolve the issue. Three Justices supported affirming the court below, and two would have clarified that "the best able and most competent" "operates primarily in disparate impact cases to establish a correlative of the business necessity defense found in Title VII cases." *Allegheny Hous. Rehab. Corp.*, 532 A.2d at 317 n.2 (internal quotation marks omitted).

11

Another three Justices supported reversing the court below and would have "modified" the burden-shifting framework to require that a plaintiff as part of his *prima facie* case make "the additional showing . . . that he was the 'best able and most competent' applicant." *Winn*, 484 A.2d at 406 (Opinion in Support of Reversal of Flaherty, J.). But no member of the *Winn* Court embraced the theory Kern advances.

Kern points to just one state appellate court opinion to support her position that "the best able and most competent" language "imposes a more specific burden upon an employer . . . by requiring a demonstration that the disappointed applicant was not best qualified." *Harrisburg Sch. Dist. v. Pa. Hum. Rels. Comm'n*, 466 A.2d 760, 762 (Pa. Commw. Ct. 1983). But that opinion preceded *Winn* and its line of reasoning has not been adopted by Pennsylvania state courts. *United States v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022); *see also* Pa. R. App. P. 3341(c)(2) (stating that certification is appropriate if "there are conflicting decisions"). However the Pennsylvania Supreme Court chooses to resolve the competing theories of the "best able and most competent" language that were at issue in *Winn* is not relevant here, because we predict that it would reject Kern's particular theory.

Because we determine it is clear how Pennsylvania's Supreme Court would respond to Kern's argument about "the best able and most competent" language, certification "is inappropriate and unnecessary." *Defreitas*, 29 F.4th at 141. Accordingly, we will deny her motion to certify her second question to the Pennsylvania Supreme Court.

2

12

Regardless of the ultimate standard of liability, courts review ADEA and PHRA age-discrimination claims premised on circumstantial evidence through the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Willis*, 808 F.3d at 644. Under that framework, the plaintiff has the burden of establishing a *prima facie* case of discrimination. *Id*. To establish a *prima facie* case of age discrimination, a plaintiff must demonstrate that (1) he is at least forty years old, (2) he suffered an adverse employment decision, (3) he was qualified for the position in question, and (4) he was ultimately replaced by an employee sufficiently younger so as to support an inference of discriminatory motive. *Id*. In cases "[w]here the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id*. (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)). The fourth element can also be satisfied "in a reduction in force context" by demonstrating "that the employer retained a 'sufficiently younger' employee." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002) (quoting *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235 (3d Cir. 1999)).

If the plaintiff establishes a *prima facie* case, then the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Willis*, 808 F.3d at 644 (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999)). At this stage, the employer is not required to prove that the articulated reason was the actual reason for the adverse employment action, and instead

need only "provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Id*.

If the employer sufficiently articulates a legitimate, non-discriminatory reason, then "the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Id.*

Here, DAS concedes that Kern has presented a *prima facie* case of age discrimination, and we conclude that DAS has proffered a legitimate, non-discriminatory reason for its decisions to terminate and later not rehire Kern, so our focus is on the third and final step of the *McDonnell Douglas* framework. In order for a plaintiff to survive an employer's motion for summary judgment at this final step, he must produce some evidence from which a reasonable factfinder could conclude that the employer's proffered reasons are pretextual. *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998). Evidence can suggest pretext in one of two ways: either it can discredit the employer's proffered non-discriminatory reasons, or it can demonstrate that the employer's actual reasons were discriminatory. *Id.*

To establish pretext by discrediting the employer's proffered reasons, a plaintiff's evidence must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (emphasis and internal quotation marks omitted). To establish pretext by demonstrating that the employer's actual reasons were

14

discriminatory, a plaintiff can point to the following evidence: (1) that the employer previously discriminated against the plaintiff; (2) that the employer discriminated against others in the plaintiff's class; and (3) that the employer treated similarly situated, younger individuals more favorably. *Willis*, 808 F.3d at 645.

For the reasons below, we agree with the District Court that Kern failed to adduce sufficient evidence of pretext for either DAS' initial decision to terminate her or its later decision not to rehire her.

3

a[2]

DAS proffers that the reason for Kern's layoff at the onset of the COVID-19 pandemic was the sudden threat of an immediate and dramatic decrease in demand for its

---

[2] Although the District Court did not address whether the termination portion of Kern's PHRA age-discrimination claim is timely, we conclude that this part is time-barred. For a PHRA claim to be timely, a plaintiff must have filed a complaint "within one hundred eighty days after the alleged act of discrimination." 43 Pa. Cons. Stat. § 959(h). Here, Kern filed a charge of discrimination with the PHRA on October 5, 2020—182 days after she was let go on April 6, 2020. To be sure, that deadline is subject to equitable tolling "where the plaintiff has been actively misled regarding the reason for his or her discharge." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1389 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc). Where it applies, a deadline is tolled until "the date the facts supporting the plaintiff's cause of action either become apparent to the plaintiff or should have become apparent to a person in the plaintiff's position with a reasonably prudent regard for his or her rights." *Id*. At the summary-judgment stage, a defendant must demonstrate that there is no dispute as to any material fact—here, whether DAS "actively misled" Kern about the reason for her termination. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 308 (3d Cir. 1983). For essentially the same reasons that we hold DAS was entitled to summary judgment on the merits of her ADEA and PHRA discrimination claims, we conclude that the termination portion of her PHRA age-discrimination claim is not subject to equitable tolling and therefore time-barred.

15

products and that eliminating Kern's position balanced the needs of reducing payroll expenditure while minimizing interruptions of day-to-day operations. Kern maintains that reason to be pretextual, but the record evidence that she points to is unconvincing.

Kern first asks us to second-guess DAS' determination that eliminating her position better balanced cost savings and maintaining essential operations relative to other employees. She claims that eliminating other employees would have resulted in greater cost savings, and that the individuals who decided to fire her did not fully appreciate her role's responsibilities. Such evidence proves little. Eliminating more highly compensated employees might have generated more cost savings, but possibly at a greater disturbance. And that her supervisors did not understand the nuances of her role is not cause to disbelieve DAS that it had decided that eliminating Kern's position would result in the least amount of disruption relative to cost savings. Our role is not to "sit as a super-personnel department that reexamines an entity's business decisions," but instead to determine "whether the employer gave an honest explanation of its behavior." *Brewer v. Quaker State Oil Refin. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (quoting *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 373 (7th Cir. 1992)). The same goes for her argument that DAS' ultimate recovery undermined the need for any layoffs in the first place. We reject out of hand that extraordinary degree of Monday-morning quarterbacking.

Kern also argues that the disorderly decision-making process for layoffs is evidence of pretext. Not so. Last-minute changes to DAS' layoff decisions, especially in the early days of the pandemic, do not demonstrate that its articulated reason was

16

pretextual. Rather, those changes coincide with the "late-breaking information" that the managers tasked with making layoff decisions were receiving. Appellee's Br. 17. Even assuming that the decision-making process was mismanaged, the ADEA and its state analogs do not override an employer's legitimate, non-discriminatory decision. *Brewer*, 72 F.3d at 332.

Kern next argues that DAS' recruitment of younger employees for her position is evidence of pretext. Though an employer's attempt to hire a younger employee to replace an older one can be evidence of pretext, we are not convinced that is the case here. DAS interviewed DeBord and considered him a "good fit" for a substantially similar position to Kern's, but it never hired him for that role. App. 340. Consistent with its decision to lay off employees that would least interrupt its operations, it initially reassigned Kern's responsibilities to other employees. After DAS recognized reassignment would not be sufficient, Torres was assigned to DAS by a staffing agency. After fourteen months of doing a "phenomenal job," DAS hired her full-time. App. 971 (emphasis omitted). In light of these facts, no reasonable factfinder could conclude that DAS' recruitment of DeBord and Torres suggests that its proffered reason for Kern's termination was pretextual.

Kern's other arguments fare no better. That DAS later tried to hire for a substantially similar role, ignores the fact that by that time DAS' business was "picking up." App. 236–37. That Kern was the "oldest employee" let go is misdirection, because several of her older coworkers were retained. Appellant's Br. 37. Likewise, White's deposition testimony that Kern worked on an "antiquated system," by which he was

17

referring to the computer software system that DAS used and in no way betraying a trace of age-related animus, is far too long on speculation. App. 640.

b[3]

DAS articulates three non-discriminatory reasons that it did not rehire Kern: she demonstrated a "toxic" attitude in the workplace, she lacked the relevant experience for the roles to which she applied, and DAS uncovered Kern's poor work product post-layoff.

Kern's various attempts to discredit those reasons do not persuade us. First, Kern points to statements cherry-picked from performance evaluations and the deposition testimonies of former co-workers. For example, Kern misquotes her former supervisor, Ross Sach, as stating that she was "a peach, meaning good to work with." Appellant's Br. 14. But that statement, quoted accurately and read in its full context, only reinforces the legitimacy of DAS' articulated reason for not rehiring her:

> Q: Did you believe that Pam Kern exhibited negative and self-focused behavior during the time you supervised her in the marketing department?

---

[3] Kern also argues that the District Court erred by treating DAS' failure to rehire her as an adverse employment action forming the basis of a retaliation claim as opposed to an age-discrimination claim. Kern's complaint alleged two adverse employment actions—DAS' initial decision to terminate her employment and its later decision not to rehire her—and two theories of unlawful conduct—discrimination and retaliation. It appears that both Kern and DAS agreed in their briefs at the summary judgment stage that Kern's failure to rehire claim sounded in unlawful age discrimination. A review of Kern's complaint accounts for any confusion that the District Court might have had. Under Kern's age-discrimination counts, Kern refers only to her layoff as "an adverse employment action" and repeatedly references her "termination." App. 1455–56, 1458. Meanwhile, Kern's retaliation counts emphasized DAS' failure to rehire her. Because we hold that DAS is entitled to summary judgment on Kern's age-discrimination claims, any error in the District Court's analysis is harmless.

18

A: Inconsistently, yes.

Q: What do you mean by inconsistently, yes?

A: *And some days she was a peach, meaning good, great.*

Q: And other days she would be negative and self-focused?

A: And other days she would be a little bit challenging.

App. 504 (emphasis added).

Kern also argues "DAS did not really think Kern was toxic," because it briefly considered rehiring her. Appellant's Br. 15. Again, the context of the text message exchange between Bonafede and Stoviak that Kern cites subverts the very point that she is trying to make. On August 28, 2020, Bonafede texted Stoviak, "Maybe we should think about pk returning?" App. 906. Stoviak responded, "Nooooooo 😂😂." *Id.* Not surprised by that unenthusiastic response, Bonafede replied "Hahaha trust me I know." *Id.* Instead of causing us to doubt whether employees at DAS considered Kern to be "toxic," that exchange suggests that they did.

Responding to several negative statements in the record about her attitude, Kern insists that *those* statements "need[] to be considered in context." Appellant's Br. 14. Our in-context review of those statements and several others that the parties point to convince us that no reasonable factfinder would disbelieve that DAS would not have rehired Kern in part because of her attitude.

Kern next submits that she really did have "sufficient eCommerce qualifications for the [Content & Asset Coordinator role]," and that in any event she was more qualified than Torres. Appellant's Br. 17–18. But employers like DAS consider other factors

19

besides qualifications in making hiring decisions. So even assuming those statements to be true, Kern still cannot demonstrate the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for [DAS'] action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765 (emphasis and internal quotation marks omitted).

Kern also asserts that her poor work product did not motivate the decision to not rehire her because no one at DAS had discovered it yet. But Bonafede testified and the record evidence clearly proves that several individuals at DAS were aware of issues related to Kern's work product around the time it declined to interview her.

Other evidence that Kern cites to in order to demonstrate that DAS' actual reasons were discriminatory is too long on speculation. The record establishes that Bonafede recruited, but did not hire, DeBord for the Content Asset & Coordinator role. There is nothing vaguely suspicious about the fact that Bonafede was forwarded DeBord's resume or that she stated that he was a "good fit" for the role. App. 340.

Kern's remaining arguments fail as a matter of logic: that DAS did not inform Kern they were not planning to rehire her, and that DAS did not initially hire anyone for the Content & Asset Coordinator role, neither undermines DAS' proffered reasons nor suggests that DAS had a discriminatory motivation.

B

The ADEA and the PHRA also make it unlawful for an employer to retaliate against an individual that has "made a charge" of age discrimination. 29 U.S.C. § 623(d); 43 Pa. Cons. Stat. § 955(d). Unlike age-discrimination claims, the parties do not argue

20

that retaliation claims brought under the ADEA are subject to a different standard than the PHRA and they agree on the applicable burden-shifting framework.

To establish a *prima facie* retaliation claim, a plaintiff is required to demonstrate that (1) he engaged in a protected activity, (2) the employer took an adverse action either after or contemporaneously with the plaintiff's protected activity, and (3) there was a causal connection between the plaintiff's protected activity and the employer's adverse action. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). If a plaintiff establishes a *prima facie* case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *Id*. If the employer does so, then the burden shifts back once more to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason." *Id*. (quoting *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

Here, Kern and DAS dispute whether Kern has satisfied the causation prong of her *prima facie* case and, if so, whether Kern has sufficiently demonstrated that DAS' proffered explanation is pretext. Because we conclude that Kern has not established causation, we do not address pretext.

1

Plaintiffs seeking to establish a causal connection between their protected employment activity and an employer's adverse action can point to "a broad array of evidence." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000)). Some of our cases have stated that when "the temporal proximity between the protected

21

activity and the adverse action is 'unusually suggestive,'" that alone suffices to establish a causal connection. *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). When this is not the case, courts must determine "whether the proffered evidence, looked at as a whole, may suffice to raise the inference." *Id.* (internal quotation marks omitted).

2

Kern informed DAS of her intention to file a charge of discrimination against it in a notice of preservation letter dated September 22, 2020. DAS received that letter on September 28. On October 7, Kern applied for the Purchasing Coordinator position that DAS posted to a third-party job application website. The day after, Stoviak instructed an employee in human resources not to pass along Kern's application to the hiring manager. Although these events occurred close in time, that timing is not unusually suggestive,[4]

---

[4] "[O]ur cases are 'seemingly split' on the question of whether the timing of the allegedly retaliatory action can, by itself, *ever* support a finding of causation." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997); *compare Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (stating that "temporal proximity merely provides an evidentiary basis from which an inference [of causation] can be drawn" and that "[t]he element of causation, which necessarily involves an inquiry into the motives of an employer, is highly context specific.") (quoting *Kachmar v. SunGuard Data Sys. Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)) (first alteration in original)), *with LeBoon*, 503 F.3d at 223 (stating that "[w]here the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality."). We said in *Jalil v. Avdel Corp.*, without any discussion about whether close in time events automatically satisfy the causation prong of a plaintiff's *prima facie* retaliation claim, that the plaintiff there "demonstrated the causal link between the two [events] by the circumstance that the discharge followed rapidly, only two days later." 873 F.2d 701, 708 (3d Cir. 1989). Several cases afterward have expressed doubt about the "unusually suggestive" timing notion that the *Jalil* Court purportedly embraced. *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 242 (3d Cir. 2016) (stating that "we generally hold that closeness in time alone

and the evidence, viewed as a whole, does not establish a causal connection between the protected activity and her rejection from the Purchase Coordinator position. In addition to timing, Kern argues that an employee's sarcastic remark to her application for the Purchasing Coordinator role—"She is not giving up!"—is evidence of antagonism. Appellant's Br. 49 (quoting App. 933). But the fact that Kern had repeatedly applied to openings for which she had not been interviewed or hired both before and after the protected conduct, undercuts the inference that DAS did not hire her because of protected conduct. *See Shaner v. Synthes*, 204 F.3d 494, 504–05 (3d Cir. 2000) (explaining that inference of causality is lessened when a plaintiff is treated similarly before and after the protected conduct at issue).

\* \* \*

For these reasons, we will deny Kern's motion to certify two questions to the Pennsylvania Supreme Court and affirm the District Court's order granting DAS' motion for summary judgment as to all Kern's claims.

---

cannot establish causation"); *Weston v. Pennsylvania*, 251 F.3d 420, 431 n.5 (3d Cir. 2001) (stating that "*Jalil* . . . is limited to the unusually suggestive facts of that case"); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997) (stating that *Jalil*'s holding "must be confined to the unusually suggestive facts of *Jalil*"); *see also Carvalho-Grevious*, 851 F.3d at 260. But even assuming that timing, without more, is enough, "unusually suggestive" timing has generally been understood to mean no more than a handful of days, which is not the case here. *See Jalil*, 873 F.2d at 708 (2 days is unusually suggestive); *Doe v. C.A.R.S. Protective Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008) (3 days is unusually suggestive).